Catherine Yates HARKINS, Martha Catherine Hedman Wright; Martin Alan Hedman; and Lukin T. Gilliland, Sr., Appellants,

v.

Jan Harkins CREWS & Pat Garet Harkins, Appellees.

No. 04–93–00705–CV.

Court of Appeals of Texas, San Antonio.

Aug. 16, 1995.

Rehearing Overruled Sept. 15, 1995.

George H. Spencer, Clemens & Spencer, San Antonio, Albert M. McNeel, Jr., Gilliland & McNeel, San Antonio, for appellant.

Kenneth McLaughlin, Jr., Warren W. Harris, Cheryl C. Crabbe, Porter & Hedges, L.L.P., Houston, Gordon L. Hollon, Law Offices of Gordon L. Hollon, Boerne, for appellee.

Before CHAPA, C.J., and PEEPLES [1] and HARDBERGER, JJ.

CHAPA, Chief Justice.

## Facts of the Case

This is an appeal from a will contest tried to a jury. The decedent, T.I. Harkins, died in 1992 at the age of 89, leaving a sizeable estate in excess of four million dollars. He was married for approximately forty-eight years to Cora, who predeceased him, and they had two children, Jan Harkins Crew and Pat Garet Harkins, appellees in this action. After Cora died, the decedent mar-

---

1. Justice David Peeples not participating.

ried Catherine Yates in 1982. Catherine, her daughter Martha, grandson Martin, and Lukin T. Gilliland, Sr., executor of the decedent's 1990 will, are appellants in this action.

While he was married to Catherine, decedent executed three wills and five codicils, as follows:

1. Last will dated November 11, 1983, and codicils dated February 21, 1984, and December 31, 1986,

2. Last will dated February 10, 1987, and codicils dated February 10, 1987, and August 10, 1988,

3. Last will dated January 18, 1990, and codicil dated January 18, 1990.

The originals of the 1983 will and codicils were destroyed at Catherine's direction outside the presence of decedent, and copies were admitted in the cause. Originals of the others were admitted into evidence. It was undisputed that the 1990 will and codicils, the 1987 will and codicils, and the 1983 will were executed with the requisite formalities.

Beginning with the 1983 codicils, each successive document gave ever-increasing portions of decedent's estate to Catherine, and ultimately to her daughter Martha and grandson Martin, at the expense of his natural children, Jan and Pat, and their descendents.[2] Included in this portion of the estate were lands in Louisiana that had been in the Harkins family for many years, along with Louisiana mineral royalties which were a major source of income to the estate. Mr. Gilliland, who had previously prepared Catherine's will, prepared the second codicil to the 1987 will and prepared the 1990 will and codicils, assisted by estate planning experts in Texas and Louisiana. In the 1990 will, Catherine was named independent executor and Mr. Gilliland was named alternate independent executor. Catherine subsequently removed herself as executor, leaving Mr. Gilliland as named executor. Among the charges appellees leveled at Mr. Gilliland were that he added liberal exculpatory clauses relieving him from liability and removed the reasonableness limitation on executor

compensation, in contrast to the provisions of the 1983 will.

Shortly after Mr. Harkins died, appellants offered the 1990 will and codicils for probate in the county court. Catherine was the principal beneficiary. The appellees opposed this application and the contest was transferred to the district court. There appellees opposed the probate of the 1990 will on grounds of undue influence, lack of testamentary capacity, actual or constructive fraud, and other grounds, and applied for the probate of the 1983 will and codicils. Appellees also sought a declaratory judgment in the district court as part of the will contest proceedings that the 1987 will and codicils were invalid and without legal effect because appellants refused to make an alternate application for probate of the 1987 will and codicils when requested to do so by appellees. Appellees also sought actual and exemplary damages against Catherine, Martha, and Mr. Gilliland for tortious interference with their inheritance rights. When the will contest proceeding was transferred to district court, a temporary administrator was appointed to handle the estate during the pendency of the will contest.

The jury found that the 1987 and 1990 wills and codicils were executed when decedent lacked testamentary capacity and that the 1990 will and codicils were procured by undue influence. It also found that Catherine and Mr. Gilliland tortiously interfered with appellees' inheritance rights and awarded appellees $1.00 each in actual damages for emotional distress and $60,000 each in exemplary damages ($10,000 against Catherine and $50,000 against Mr. Gilliland). The jury also found that the appellants prosecuted the proceeding in "good faith and with just cause."

The trial court admitted the 1983 will to probate, in which appellees, decedent's children, were the principal beneficiaries, denied probate of the 1990 will and codicils, and declared the 1987 will and codicils invalid.

**2.** Following is a breakdown of the approximate dollar values of the total bequests to appellant Catherine Yates Harkins and appellees Pat Harkins and Jan Harkins Crews under the three wills:

| | 1983 Will | 1987 Will | 1990 Will |
|---|---|---|---|
| Catherine | $500,532 | $2,282,528 | $2,732,278 |
| Pat and Jan (each) | 1,083,339 | 518,218 | 384,224 |

The 1983 codicils were not proven at trial and were not admitted to probate. The trial court disregarded the jury's exemplary damage award to appellees. The court also ordered all attorney fees of both appellants and appellees, as well as costs of the temporary administration, to be paid from the estate.

Appellants bring this appeal on five points of error, and appellees respond with six cross-points.

### Declaratory Judgment

■ In their first point of error, appellants contend that the trial court erred in submitting jury issues on appellees' declaratory judgment pleading and in rendering a declaratory judgment that the 1987 will and codicils, which had not been offered for probate, were invalid. Appellants argue that Texas law precludes the use of a declaratory judgment action to determine the validity of a will that has not been offered for probate. They assert that the trial court's judgment wrongly precludes Catherine's right to offer the 1987 will for probate within the statutory time and to present the required proof for admission to probate, because she was not legally required to offer the 1987 will during the will contest proceeding. Appellees counter that they sought the declaratory judgment on the 1987 will because they allege that appellants wanted to drag the entire process through another lawsuit if the 1990 will was declared invalid.

Section 37.004 of the Declaratory Judgments Act (the Act) provides that "[a] person interested under a ... will ... may have determined any question of construction or *validity arising under the instrument* ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX.CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1986) (emphasis added). Appellants urge that the italicized language means only that a district court may declare certain provisions of a will invalid after it has been admitted to probate. They rely on three cases. In *Howard Hughes Medical Institute v. Lummis*, 596 S.W.2d 171 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), Howard Hughes Medical Institute asserted in a Texas probate court proceeding that it had filed an

action in Nevada district court to establish an alleged lost will. The temporary administrator then filed a declaratory judgment action to declare the alleged lost Nevada will invalid. The trial court granted the declaratory judgment. The court of civil appeals reversed, holding that a declaratory judgment could not be used to determine the validity of the Institute's claim because such a declaration would be an impermissible advisory opinion before the issue was joined in a will contest and would subvert the statutory scheme and time limitations established by the probate code to prove up a valid will. *Id.* at 173. We find this case distinguishable from the instant case. The purported will at issue in *Howard Hughes* was not before the trial court, which was a probate court and not a district court, nor were all known wills before the court. Moreover, the declaration sought a determination before a will contest had even been instituted and was therefore correctly assessed by the court of civil appeals as nothing more than advisory. *See Texstar N. Am., Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 679 (Tex.App.—Corpus Christi 1991, writ denied) (justiciable controversy must exist between parties before a declaratory judgment action will lie; otherwise, opinion sought is advisory). In the case before us, all known wills were before the court, and the validity of all of the wills had been placed in issue in a will contest.

Appellants next cite *Lipsey v. Lipsey*, 660 S.W.2d 149 (Tex.App.—Waco 1983, no writ), in which the court, in a footnote, stated that the validity of the will at issue could not be challenged through a declaratory judgment action. *Id.* at 150. In *Lipsey*, only one will was at issue and had been offered by decedent's widow for probate. Decedent's son contested the will and asked for a declaration that it was null and void. When the proponent's request for a nonsuit was granted by the trial court, the contestant appealed, asserting that his will contest was a counterclaim for affirmative relief. The court of appeals held that the contestant did not show a cause of action independent of the will proponent's claim, because he sought nothing

more than to resist the widow's efforts to probate the will. *Id.* at 151.

The body of the *Lipsey* opinion does not address the use of a declaratory judgment action on the validity of a will not offered for probate, because the issue was not before the court on appeal. In a footnote, the court noted· that the contestant had also sought a declaratory judgment that the will was invalid. Citing *Howard Hughes* and *Kausch v. First Wichita Nat'l Bank,* 470 F.2d 1068 (5th Cir.1972), the court stated, "In any event, we hold the validity of the entire will cannot be questioned through a declaratory judgment proceeding." *Lipsey,* 660 S.W.2d at 150. We do not consider this to be controlling precedent to the case at hand, in which we have multiple wills before the court, including the 1987 will, which had not been offered for probate.

Finally, appellants rely on *Kausch v. First Wichita Nat'l Bank,* 470 F.2d 1068 (5th Cir. 1972). In *Kausch,* the court interpreted the phrase, "arising under the instrument," as meaning "only that the Texas District Courts may declare invalid particular provisions of a will that has been admitted to probate ... but they have no power to conduct an independent inquiry into the validity of the will as a testamentary instrument." *Id.* at 1070. The court in *Kausch,* however, was concerned with the application of a declaratory judgment to a will that had already been admitted to probate in the county court. While we agree with the court that a declaratory judgment action in district court cannot be used to collaterally attack a valid will that has already been admitted to probate in the county court, such is not the case in the dispute before us. Appellees did not launch a collateral attack on a will admitted to probate. Instead, they sought a declaration from the district court, in the proper exercise of its powers under the Declaratory Judgments Act, on the validity of a will which had not been offered for probate. *See, e.g., Guidry v. Hardy,* 254 So.2d 675, 680 (La.Ct.App. 1971), *cert. denied,* 260 La. 454, 256 So.2d 441 (1972).

 The Declaratory Judgments Act "is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex.Civ.Prac. & Rem. Code Ann. § 37.002 (Vernon 1986). The Act "provides a method whereby parties may bring actions to determine their relative rights without waiting until they have suffered irreparable damage. To this end the Act provides for broad powers of construction in the Courts." *McCart v. Cain,* 416 S.W.2d 463, 466 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.). Thus, Texas district courts have broad powers to render declaratory judgment when the judgment will end a controversy or serve a useful purpose. *See Public Util. Comm'n v. City of Austin,* 728 S.W.2d 907, 910 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Moreover, under article V, section 8, of the Texas Constitution, a district court acting as a probate court retains its powers as a court of general jurisdiction. 17 M.K. Woodward & Ernest E. Smith III, Probate and Decedents Estates § 21 (Texas Practice Supp.1995) (when a "district court will act as a probate court, it will have full probate jurisdiction, and in addition may exercise in connection with it its powers as a court of general jurisdiction"); *see* Tex. Const. art. V, § 8. When a district court is hearing a contested probate matter transferred to it by a county court, it is exercising original jurisdiction granted by section 5 of the probate code, and not appellate jurisdiction, and the jurisdiction it exercises is on the same level as a county court sitting in probate. *Jackson v. Thompson,* 610 S.W.2d 519, 522 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). A district court exercising original probate jurisdiction has the power to hear all matters incident to an estate. Tex.Prob. Code Ann. § 5(e) (Vernon Supp.1995). In proceedings in district court, the phrase "incident to an estate" includes, in addition to the probate of wills, "generally all matters relating to the settlement, partition, and distribution of estates of deceased persons." *Id.* § 5A(b); *see Green v. Watson,* 860 S.W.2d 238, 243 (Tex.App.—Austin 1993, no writ) (action "incident to an estate" is one in which the outcome will have a direct bearing on collecting, assimilating, or distributing the decedent's estate). In the instant case, the trial court's action in rendering a declaratory

judgment as to the invalidity of the 1987 will and codicils permitted a final determination of the rights of the parties and the ultimate disposition of the decedent's estate.

■ The court's declaration also furthers the public policy of promoting judicial economy. "Courts favor avoiding a multiplicity of suits and encourage resolutions in one suit of all matters existing between the parties." *Massey v. Massey,* 807 S.W.2d 391, 397 (Tex. App.—Houston [1st Dist.] 1991), *writ denied,* 867 S.W.2d 766 (Tex.1993). Indeed, section 83(a) of the probate code mandates that a court hear together different applications for probate of multiple wills so that it can determine which will should be admitted to probate. Tex.Prob.Code Ann. § 83(a) (Vernon 1980).[3] The mandatory nature of this section leads to a reasonable inference that the drafters of the probate code favor the use of a single proceeding to determine the validity of multiple wills. *See Plummer v. Roberson,* 666 S.W.2d 656, 658 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (op. on reh'g) (probate code recognizes problem of multiple wills and provides procedural mechanism for hearing competing applications in single proceeding). Finally, the clear wording of section 37.004 of the Declaratory Judgments Act does not indicate that a "will" whose validity is being challenged must be one that has been offered or admitted to probate.

In conclusion, in the instant case the district court was faced with two out of three duly executed wills of decedent joined in a will contest, with a third duly executed will known to be in existence and brought before the trial court in a declaratory judgment action in the will contest proceeding. In this circumstance, considering the broad general powers of the district court, the comprehensive nature of the Declaratory Judgments Act, the preference to determine all rights incident to an estate in a single proceeding as expressed in the probate code, and the importance of public policy considerations of judicial economy, we conclude that the dis-

trict court did not err in rendering a declaratory judgment that the 1987 will and codicils were invalid.

Moreover, if the court's application of the Act to the 1987 will and codicils was erroneous, the error was harmless because the invalidity of the 1987 will was properly determined by the jury's finding of fact that decedent lacked testamentary capacity at the time of the will's execution. Mr. Harkins's testamentary capacity was put in issue by the introduction by the appellants of the 1987 will as a *revoking instrument* of the 1983 will. This issue brings us to appellants' second point of error.

### Burden of Proof of Testamentary Capacity

■ In their second point of error, appellants contend that the trial court erred in overruling their objection to Jury Question 1, because, they assert, the court's charge erroneously placed on them the burden of proof to establish decedent's testamentary capacity to execute the 1987 will and codicils. Jury Question 1 asked: "Do you find that at the time the 1983 Will, the 1987 Will, and the 1990 Will each was executed by T.I. Harkins, he had testamentary capacity?" The jury answered that Mr. Harkins had testamentary capacity to execute the 1983 will, but did not have capacity to execute the 1987 and 1990 wills.

Appellants argue that in the declaratory judgment action, the burden to prove Mr. Harkins's testamentary capacity should have been placed on the appellees because they asserted an affirmative claim that the 1987 will and codicils were invalid. In their answer to appellees' declaratory judgment action, the appellants specially excepted to the declaration seeking judgment as to the validity of the 1987 will and "den[ied] that the alleged 1983 Will and any Codicils thereto are entitled to probate, such Will and Codicils having been revoked by the subsequent Wills of T.I. Harkins." Appellants claim that

---

**3.** Section 83(a) provides:

If, after an application for the probate of a will ... has been filed, and before such application has been heard, an application for the probate of a will of the decedent, not theretofore pre-

sented for probate, is filed, the court shall hear both applications together to determine what instrument, if any, should be admitted to probate, or whether the decedent died intestate. Tex.Prob.Code Ann. § 83(a) (Vernon 1980).

they therefore sought no affirmative relief with respect to the 1987 will and thus did not have the burden to establish testamentary capacity. They assert that their pleading was purely defensive. The trial court, however, considered that the appellants "interposed the [1987 Will] as an instrument revoking the 1983 Will." We agree.

A party who seeks revocation by a subsequent will or declaration in writing must prove the subsequent instrument was executed with the same formalities that are required to probate a will. *Covington v. McDonald*, 307 S.W.2d 335, 337 (Tex.Civ. App.—Texarkana 1957, no writ); *Wells v. Royall Nat'l Bank*, 249 S.W.2d 695, 698 (Tex. Civ.App.—Galveston 1952, writ ref'd n.r.e.); *see* TEX.PROB.CODE ANN. § 63 (Vernon 1980). Moreover, it is not necessary that a purported revoking instrument be offered for probate. *Brackenridge v. Roberts*, 114 Tex. 418, 267 S.W. 244, 248 (1924), *reh'g overruled*, 114 Tex. 418, 435, 270 S.W. 1001 (1925). Not only must a party seeking revocation by a subsequent instrument prove execution with the requisite formalities, but he must also "prove that the subsequent instrument was executed at a time when the [testator] was of sound mind and disposing memory." *Lowery v. Saunders*, 666 S.W.2d 226, 237–38 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Generally, the burden of proof in a declaratory judgment is on " 'the party who, on the pleadings, asserts the affirmative claim, and who in the absence of evidence will be defeated, and is not controlled by the position of the parties on the docket as plaintiff or defendant in the declaratory action.' " *Mitchell v. Rancho Viejo, Inc.*, 736 S.W.2d 757, 760 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (quoting I.R. McDONALD, TEXAS CIVIL PRACTICE § 2.06 (Rev.1981)); *see also Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 350 (Tex.1955). While it is true that appellees brought the declaratory action regarding the 1987 will, appellants' pleadings asserted the 1983 will was revoked by "subsequent Wills"; thus, the controlling issues as to whether the 1987 will was a valid revoking instrument of the 1983 will were the formalities of execution and the testamentary capacity of Mr. Harkins. Trial stipulations established that the 1987 will was executed

with the requisite formalities. The burden of proving the remaining issue of testamentary capacity was properly placed on appellants. *See Lede v. Aycock*, 630 S.W.2d 669, 673 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (burden of proof falls upon party asserting the affirmative of controlling issues); *McCart*, 416 S.W.2d at 466. In *McCart*, the appellant brought a declaratory judgment action to determine that there were no deed restrictions against her property. The court held that the fact appellant brought the action did not change the well-established rule that those seeking to enforce restrictive covenants bear the burden of proving the existence of the covenants. *Id.* at 465. The court stated: "We do not believe that the general rule as to the burden of proof in cases involving restrictive covenants is rendered inoperative because the plaintiff filed suit for declaratory judgment rather than to await filing of suit by the defendants." *Id.; see Wiley v. Schorr*, 594 S.W.2d 484, 487 n. 3 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). So, too, in the instant case we find the general rule applicable that one who seeks to prove revocation by subsequent instrument bears the burden of proving the decedent had testamentary capacity at the time of the execution of the instrument. Appellants' second point of error is overruled.

### Nonrevocation of 1983 Will

In Points of Error Three and Four, appellants argue that there was legally and factually insufficient evidence to support the jury's finding of nonrevocation of the 1983 will by its two codicils.

Appellees initially pleaded to admit both the 1983 will and its codicils to probate, but they did not place the codicils into evidence or put on proof that the codicils were executed with the requisite formalities, as required by the Texas Probate Code. TEX. PROB.CODE ANN. § 59 (Vernon Supp.1995); *see In re Estate of Jansa*, 670 S.W.2d 767, 767–68 (Tex.App.—Amarillo 1984, no writ).

The court in Jury Question # 2 asked only if the jury found that the 1983, 1987, and 1990 wills were not revoked, and did not

mention the codicils. The jury found that none of the wills was "revoked." As previously noted, in Jury Question # 1, the jury had found that Mr. Harkins did not have testamentary capacity when he executed the 1987 and 1990 wills. The trial court ultimately entered judgment probating the 1983 will without the codicils, and found that all necessary proof had been made.

Both of the 1983 codicils revoked parts of the 1983 will. Appellants contend that probating the 1983 will without its codicils was wrong and there is no legally or factually sufficient evidence that the codicils did not partially revoke the 1983 will. They assert that the trial court therefore erred by not disregarding the jury's finding that the 1983 was not revoked and by admitting the will to probate without complying with the statutory proof of nonrevocation.

In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). In considering a factual sufficiency point, we may not substitute our judgment for that of the jury, but must assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Section 63 of the probate code provides the exclusive methods of revoking a will. *Rich v. Rich,* 615 S.W.2d 795, 798 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *see* TEX.PROB.CODE ANN. § 63 (Vernon 1980). A will may be revoked by a subsequent writing, executed with like formalities, or by the testator's destroying or canceling of the will, or causing it to be done in his presence. *Id.* Appellees presented the following proof that the 1983 will was not revoked. First, by presenting evidence that decedent lacked testamentary capacity when

making the 1987 and 1990 wills, they established that the 1983 will had not been revoked by subsequent wills, as found by the jury, which finding is not challenged on appeal. Next, they offered proof that the 1983 will had not been revoked by physical destruction by the testator, because they put on proof that the original of the 1983 will had been physically destroyed by Mr. Harkins's secretary at Catherine's instruction outside the presence of decedent. Finally, Pat Harkins testified that the 1983 will had not been revoked.

Appellees also claimed to have the benefit of the "presumption of continuity" of the will. This presumption arises when a will has been produced without mutilation or other evidence of an intent to revoke, and the will has been duly proved to have been executed without any circumstances to cast doubt on its execution. *McElroy v. Phink,* 97 Tex. 147, 76 S.W. 753, 754 (1903). The presumption arises even though the will cannot be produced, "when it has been traced to the hands of another than the testator...." *id.,* as occurred in the instant case. The presumption eliminates the proponent's duty to offer additional evidence and makes a prima facie case against revocation. *See id.* This is a rebuttable presumption, however. *In re Estate of Page,* 544 S.W.2d 757, 760 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). "If a Contestant puts on sufficient evidence to rebut the presumption of nonrevocation, then the burden of going forward with evidence shifts back to the Proponent who must discharge, by a preponderance of the evidence, that the Will was not revoked." *Id.* at 760–61. Appellants put on sufficient evidence that the 1987 and 1990 wills expressly revoked the 1983 will. This shifted the burden to the appellees to show that the 1983 will was not revoked by subsequent wills, which burden they discharged by gaining a jury finding that the decedent lacked testamentary capacity at the time of the execution of the 1987 and 1990 wills.

On the other hand, the purported codicils to the 1983 will (1) revoked and replaced certain paragraphs of the 1983 will dealing with the appointment of trustees, (2) con-

tained specific devises of his Louisiana property, including a 25% undivided royalty interest to Catherine, with the balance to the appellees (which property had formerly passed entirely to the appellees in the residuary clause), and (3) expressly *ratified, confirmed, redeclared, and republished* the 1983 will. Moreover, the first codicil states: "I hereby *supplement and amend* my Last Will by disposing of all my property situated in the State of Louisiana...." Nothing in the revocation language of the codicils can be construed as an intent to revoke the entire 1983 will. From the express language of the instruments, we conclude that there is legally and factually sufficient evidence to sustain the jury's finding that the codicils did not revoke the 1983 will. *See Burton v. Bell*, 380 S.W.2d 561, 568–69 (Tex.1964) (review of circumstances showed no intent that codicil revoked testator's will). In conclusion, we find that the appellees carried their burden of proving that the 1983 will was not revoked.[4]

 Appellants charge that appellees judicially admitted revocation by pleading that Mr. Harkins executed the two codicils, filing them with the court, and requesting their admission to probate. Pleadings are not judicial admissions unless they make a clear, deliberate, unequivocal statement of fact. *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991). Nothing in appellees' pleadings makes reference to the codicils as revoking instruments. Furthermore, appellants waived the issue of judicial admissions. "[A] party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted." *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex.1983)). The record reveals that appellants did not object

to Pat Harkins's testimony that the 1983 Will had not been revoked. Nor did the appellants object to the court's charge, which specifically defined the 1983 Will as "the purported Last Will of T.I. Harkins allegedly signed on November 11, 1983," in contrast to the charge's definitions of the 1987 and 1990 Wills as including their respective codicils. Finally, neither party requested any jury issues dealing with the 1983 codicils. We conclude that appellants have waived any complaint that the appellees' pleadings constituted a judicial admission that the codicils revoked the 1983 will.

## Cumulative Error

In their final point of error, appellants argue that cumulative error resulted by permitting the jury trial on the declaratory judgment action to declare the 1987 will void and by the special issue placing the burden on appellants to prove testamentary capacity for the 1987 will. They contend that placing the question of testamentary capacity immediately before the question as to nonrevocation affected the jury's decision in finding the 1983 Will was not revoked. Because we have found that the determination of the invalidity of the 1987 will under the Declaratory Judgments Act was not error, and because we have found that the trial court did not err in placing the burden of proving testamentary capacity for the 1987 will on appellants, we overrule this point of error.

## Appellees' Cross–Points

Appellees bring six cross-points regarding the trial court's treatment of damage and attorney fee awards and the trial court's failure to disregard certain jury findings favoring appellants.

4. Appellees concede that as a matter of substantive probate law a codicil may be probated after the will to which it relates has already been probated. *See Allen v. Bolton*, 416 S.W.2d 906, 910 (Tex.Civ.App.—Corpus Christi 1967, no writ) (probate court has power to admit to probate a subsequent will or codicil after having probated a former will by an earlier decree). Appellees suggest that, should this court conclude that the codicils could be admitted to probate, it would

be proper for us to remand for the limited purpose of permitting appellants to prove up and probate the codicils. This we decline to do. In the trial below neither party attempted to prove that the codicils were executed with the requisite formalities and testamentary intent, as required by Tex.Prob.Code Ann. § 59 (Vernon 1980). Any opinion we would express regarding the admissibility of the codicils to probate would be advisory.

## Temporary Administration Expenses

In their first cross-point, appellees assert that the trial court erred in failing to assess actual stipulated damages against appellants. The parties stipulated to temporary administration expenses of $37,484. The trial court assessed these expenses against the estate. Appellees rely on *King v. Acker*, 725 S.W.2d 750 (Tex.App.—Houston [1st Dist.] 1987, no writ), for the proposition that expenses of a temporary administrator pending a will contest are actual damages in a cause of action for tortious interference of inheritance rights. *Id.* at 756. In *King*, the court further stated that such expenses are "part of the consequential damages resulting from the tortious conduct of appellant," and found that the trial court was correct in instructing the jury that such consequential damages could be considered in determining actual damages. *Id.* However, in *King*, the appellee had specifically pleaded for recovery of the temporary administrator's commission. *Id.* at 755. "Consequential damages are special damages and must be pleaded and proved separately." *Naegeli Transp. v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 739 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *see* TEX.R.CIV.P. 56. In the instant case, appellees did not plead to recover the costs of the temporary administrator as consequential damages, nor was such an issue put to the jury. Therefore, the trial court did not err in assessing the temporary administration costs against the estate rather than as damages against appellants.

## Exemplary Damages

In their second cross-point, appellees contend that the jury's award of exemplary damages was proper and should not have been disregarded by the court. The jury found actual damages of $1.00 each for emotional distress suffered by appellees, and total exemplary damages in the amount of $20,000 against Catherine and $100,000 against Mr. Gilliland. The trial court denied these exemplary damages upon appellants' motion, referring to the $1.00 actual damage awards as "nominal." "Exemplary damages may be awarded only if damages other than nominal damages are awarded." TEX.CIV. PRAC. & REM.CODE ANN. § 41.004 (Vernon Supp.1995). While no specific sum is defined as nominal damages, "usually one dollar is the amount fixed for nominal charges." *Press v. Davis*, 118 S.W.2d 982, 995 (Tex.Civ. App.—Fort Worth 1938), *modified on other grounds sub nom Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940). Appellees rely on this court's decision in *Donnel v. Lara*, 703 S.W.2d 257 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.), which concluded that a one dollar award for each of two plaintiffs was an actual damage award capable of sustaining an award for exemplary damages. *Id.* at 261. We decline to follow *Donnel*, however, noting that the decision was handed down prior to the legislature's enactment of section 41.004 in 1987. The plain wording of the statute prohibits the award of exemplary damages in the event of an award of nominal damages, and the usual meaning of the phrase "nominal damages" refers to an award of one dollar. *See* TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Moreover, "[e]xemplary damages must be reasonably proportioned to actual damages," *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981), although "there is no fixed formula for determining the reasonableness of exemplary damages in relation to actual damages." *Motsenbocker v. Potts*, 863 S.W.2d 126, 137 (Tex.App.—Dallas 1993, no writ); *see id.* at 138 (giving various examples of reasonable damage ratios ranging from 3.7:1, to 2250:1 in the *Donnel* case). We consider the total exemplary damage awards of $120,000.00 not reasonably proportioned to the $2.00 of actual damages awarded.

Appellants also argue that the stipulated temporary administration expenses, which they term "stipulated actual damages" also support the award of exemplary damages. However, we have found that these expenses were properly determined not to be damages awardable to appellees. Therefore, the stipulated expenses cannot support the exemplary damage award. Appellees' second cross-point is overruled.

### Jury's Finding of "Good Faith"

In cross-points three and four, appellees contend that there is no evidence and factually insufficient evidence to support the jury's findings that the appellants prosecuted the probate of the 1990 will "in good faith and with just cause." Section 243 of the probate code provides:

When any person designated as executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX.PROB.CODE ANN. § 243 (Vernon Supp. 1995). Section 243 also allows beneficiaries of an alleged will to recover reasonable expenses and attorney fees when promoting or defending a will in good faith, whether successful or not. *Id.* We have been unable to find, nor have appellees cited, any authorities that distinguish an executor's right to reimbursement under section 243 in spite of a finding of undue influence, and a beneficiary's right to reimbursement in light of such a finding. Although *Huff v. Huff*, 132 Tex. 540, 124 S.W.2d 327, 330 (Tex.1939), and its progeny, relied upon by appellants, dealt with executors' rights, we believe the same rationale applies to nonexecutors.[5] Therefore, the jury's finding of good faith and just cause in prosecuting the probate of the 1990 will by Catherine, Martha, and Martin would also allow them recovery of attorney's fees.

Section 75 of the probate code places a duty upon a person having custody of a testator's will to deliver it to the court of proper jurisdiction, and Section 76 provides that an executor named in a will may make application to the court to probate the will.

TEX.PROB.CODE ANN. §§ 75, 76 (Vernon 1980). Mr. Gilliland was both the possessor of the 1990 will and its executor, and was therefore a proper person to offer the will for probate. *See Plummer v. Roberson*, 666 S.W.2d 656, 658 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

Appellees argue that appellants could not have been acting in good faith because they procured the 1990 will by undue influence, as found by the jury.[6] However, the Texas Supreme Court has declared that a jury finding that a will was the product of an executor's undue influence does not, as a matter of law, bar the recovery of attorney fees by the executor if the jury also finds that the executor acted in good faith in offering the will for probate. *Huff*, 124 S.W.2d at 330; *see Russell v. Moeling*, 526 S.W.2d 533, 535–36 (Tex. 1975); *Blackmon v. Nelson*, 534 S.W.2d 439, 442 (Tex.Civ.App.—Texarkana 1976, no writ). The issue of good faith is a question of fact, to be determined under all the circumstances of the case. *Huff*, 124 S.W.2d at 330; *Blackmon*, 534 S.W.2d at 441–42. The jury instruction defined "good faith" as "an action which is prompted by honesty of intention, or a reasonable belief that the action was probably correct."

Mr. Gilliland, the executor, testified that "the '90 Will was the most recent will, the will that I believe to be the valid will[.]" He further testified that Mr. Harkins was of sound mind at the time he executed the 1990 will. Although there was controverting testimony from other witnesses regarding Mr. Harkins's state of mind, his physician as well as other witnesses also testified that Mr. Harkins was of sound mind in 1990. Mr. Gilliland testified that he had the will drawn up by both Texas and Louisiana estate planning experts based on the instructions given to him by Mr. Harkins. One of the witnesses who signed the 1990 will and Mr. Gilliland's secretary, who notarized the will, both testified that they noticed nothing out of the

---

5. Section 243 formerly dealt with executors only. The statute was amended in 1987, adding the portion that allows nonexecutors to recover expenses and fees. *See* Act of June 17, 1987, 70th Leg., R.S., ch. 462, § 1, 1987 Tex.Gen.Laws 2048–49.

6. We note that the jury question regarding undue influence did not require a finding as to *who* exercised undue influence over Mr. Harkins: "Do you find that the 1987 Will and the 1990 Will each was procured by undue influence exerted over T.I. Harkins?" The jury answered "No" as to the 1987 Will and "Yes" as to the 1990 will.

ordinary in Mr. Harkins's demeanor at the time of the signing, and that a normal general conversation was carried on. The other witness, who was Mr. Harkins's accountant, testified that Mr. Harkins was of sound mind at the time of the execution of the will in January 1990 and during his business dealings with Mr. Harkins in 1990.

Appellees also argue that because appellants refused to offer the 1987 will for probate as an alternative to allow the disposition of decedent's estate in one proceeding, they did not show good faith. Mr. Gilliland testified that he was not aware of any law that required him to offer alternate wills for probate at the same time, and that he believed the 1990 will revoked the 1987 will.

" 'It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury.' " *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990) (quoting *Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 908 (1942)). Viewing all of the above in a light most favorable to the jury's finding, we conclude that the foregoing is some evidence that Mr. Gilliland, as executor named in the 1990 will, offered the will for probate in good faith.

Moreover, the issues of undue influence and testamentary capacity were hotly contested, with a wealth of conflicting evidence presented by both sides. *See Huff*, 124 S.W.2d at 330 (finding executor entitled to submit question of good faith to jury in "bitterly contested [offer to probate will in which] the question of undue influence was one of the paramount defenses urged against its probate"). For example, appellees contended at trial that the removal of the reasonableness requirement to executor's fees was evidence of Mr. Gilliland's self-interest to the detriment of Mr. Harkins. Yet, testimony showed that Mr. Gilliland's executor fees would be capped at five percent by law. *See* Tex.Prob.Code Ann. § 241 (Vernon Supp.1995). There was no evidence presented that he contemplated taking a greater commission than that allowed by law, or even that he would accept the maximum allowable

fee. Considering "all the circumstances" of the case, *Huff*, 124 S.W.2d at 330, and the conflicting nature of the testimony, and being mindful that we may not substitute our judgment for that of the trier of fact, *Pool*, 715 S.W.2d at 635, we cannot say that the evidence supporting the jury's finding of Mr. Gilliland's good faith in offering the will to probate was so weak as to be manifestly unjust or wrong.

■ In assessing the sufficiency of the evidence relative to the other appellants, the record reveals the following: Catherine, as Mr. Harkins's spouse, was aware that he had executed the 1990 will, because she had actively taken part in reviewing the drafts and had retained Mr. Gilliland to draw up the will. She was also doubtless aware that it was the most recently executed will, and that she was the named executor in the will, although she subsequently withdrew as executor in favor of Mr. Gilliland. Under the probate code "any interested person" may make application for probate of a will. Tex. Prob.Code Ann. § 76 (Vernon 1980). As a principal beneficiary, Catherine was an interested person. Catherine testified that her deteriorating health in 1990 caused Mr. Harkins to change his will so that if she predeceased him her children would be left an estate through her, and that Mr. Harkins discussed the changes to his will with Mr. Gilliland over several months. Considering the jury instruction given that good faith could be found in light of a "reasonable belief that the [application to probate the 1990 will] was probably correct," we conclude that there was legally and factually sufficient evidence for the jury to conclude that Catherine's application was undertaken in good faith.

Martha and Martin both testified that they were unaware of the terms of the 1990 will. Although both Martha and Martin took a greater share of the estate under the 1990 will, there was no evidence presented that they had any interactions with Mr. Harkins regarding the drafting of the 1990 will. There was evidence that they both lived at the Harkins ranch at various times and assisted both Mr. and Mrs. Harkins. We conclude that there is both legally and factually

sufficient evidence to uphold the jury's finding of good faith relative to appellants Martha and Martin.

### Attorney's Fees

 In cross-points five and six, appellees contend that the court erred in granting appellants' attorney fees from the estate because there is no evidence and factually insufficient evidence to support the court's finding that appellants' fees were "reasonable and necessary." Appellees also argue that appellants should not be granted fees under Texas Probate Code section 243 allowing "necessary and reasonable" expenses and fees, because no amount of fees could be reasonable when expended to probate the 1990 will, which was found by the jury to tortiously interfere with appellees' inheritance rights, and which was procured under undue influence. As we have concluded in the foregoing discussion, however, the jury's finding that the 1990 will was offered in good faith was adequately supported.[7] The wording of section 243 regarding an executor's recovery of fees is mandatory: "[W]hether successful or not, he *shall* be allowed out of the estate his necessary expenses...." Tex. Prob.Code Ann. § 243 (Vernon Supp.1995); *see Schulte v. Marik,* 700 S.W.2d 685, 687 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (section 243 is unambiguous and should be enforced according to its wording). The wording regarding recovery of fees by beneficiaries is permissive. Appellees cite to no authority that would allow us to ignore the plain wording of the statute on the basis of adverse jury findings. The parties stipulated that the issue of attorney fees under the probate code and the declaratory judgments act would be submitted to the court. The record contains detailed statements of the expenses and attorney fees incurred by appellants in promoting and defending the 1990 will. We conclude that there is ample evidence to support the trial court's award of reasonable attorney fees pursuant to section

423 and overrule appellees' fifth and sixth points of error.

The judgment of the trial court is AFFIRMED.

---

**7.** While the jury ultimately found undue influence in the execution of the 1990 will and tortious interference with inheritance rights, we note that the instructions given to the jury regarding tortious interference allowed such a finding in the presence of "constructive fraud," which was defined as "a breach of a duty which *irrespective of moral guilt,* the law declares fraudulent because of its tendency to deceive, to violate conscience, or to injure public interest." (emphasis added). Based on this instruction, the jury's findings of good faith in the offer of the will for probate and tortious interference can be reconciled.