**In the ESTATE OF Gertrude Churchwell FOSTER, Deceased.**

**No. 07–98–0325–CV.**

Court of Appeals of Texas, Amarillo.

May 7, 1999.

Billy W. Boone, Abilene, for appellant.

Johnny Actkinson, Aldridge Aycock Actkinson & Rutter LLP, Farwell, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

REAVIS, Justice.

Appellant Barbara Trimble Whitmore (Whitmore) brings this appeal from two separate orders signed July 16, 1998, by the district court acting within its probate jurisdiction, one in which the trial court admitted the will of Gertrude Churchwell Foster dated August 6, 1993, to probate and authorized issuance of letters testamentary to appellees Billy Joe Foster and Marcia Foster Bell (Foster and Bell). The other order denied Whitmore's objection to the issuance of letters testamentary to Foster and Bell.

Presenting nine points of error, Whitmore contends the trial court erred in declaring that Foster and Bell did not contest the will in violation of the *in terrorem* provision of the will and challenges the appointment of Foster and Bell as independent co-executors of the estate. Based on the rationale expressed herein, we will affirm.

Gertrude Foster (Gertrude) and W.N. Foster were married in 1920, and six children were born of the marriage, to-wit: Murrell (Nicky) Foster, Ernestine Foster Feagen, Marcia Foster Bell, Billy Joe Foster, Barbara Trimble Whitmore, and Nel-

son Foster. Nelson Foster predeceased his parents and was survived by five children of his own. W.N. Foster died on February 8, 1996, and Gertrude died on January 20, 1998. On August 6, 1993, Gertrude and W.N. Foster, while residing in a rest home, executed separate, but common wills, which were prepared by an attorney who was also Whitmore's daughter.[1] Among other common provisions, (i) the wills devised all the estate of the first spouse to die to the surviving spouse for the life of the surviving spouse and upon the death of the surviving spouse, the remainder to pass in accordance with other provisions, and (ii) each will contained a common *in terrorem* provision. Also, both wills appointed Foster and Bell as independent executors, and Whitmore as alternate or successor independent executor. Following the death of W.N. Foster, his 1993 will was admitted to probate and Foster and Bell were appointed independent executors of his estate.

After Gertrude's death, Foster and Bell applied to probate her 1993 will and for letters testamentary. Also, the application of Foster and Bell averred that if Gertrude's 1993 will was not admitted to probate, they requested that her 1991 will be admitted to probate and that they be appointed independent executors. Whitmore responded with an objection to the application of Foster and Bell to probate alternative wills contending that sections 81 and 83 of the Probate Code[2] do not allow the filing of an application to probate alternative wills. Notwithstanding the fact that Foster and Bell would receive a greater economic benefit under the 1993 will, by point of error one, Whitmore contends that because the filing of the application to probate alternative wills and the hearing thereon constitute a will contest as a matter of law, the trial court erred in ordering that the "no contest clause" was not invoked. Also, by her second point, Whit-

---

1. The execution of Gertrude's 1993 will was videotaped and introduced into evidence.

2. All references to the Probate Code are to the Texas Probate Code Annotated (Vernon 1980 and Supp.1999).

more contends the trial court's holding that the "no contest clause" was not invoked is against the great weight and preponderance of the evidence, and by her third point, Whitmore contends the "no contest clause" prohibited the filing of an application to probate alternative wills. We disagree. Because Whitmore briefed her first, second and third points together, we will combine them for purposes of our review.

■ Initially, we note that the Texas Rules of Civil Procedure govern proceedings in probate matters except as otherwise specifically provided, *Cunningham v. Parkdale Bank* 660 S.W.2d 810, 812 (Tex. 1983), and that Rule 48 provides that a party may set forth two or more claims in the alternative. Section 81 of the Probate Code sets out the required contents of an application for probate of a written will and letters testamentary and section 83 sets out the procedure pertaining to a second application; however, neither section prohibits the filing of two or more wills for probate, alternatively, in one application. The application of Foster and Bell first offered the 1993 will for probate, and was followed by the paragraph stating "if the will dated August 6, 1993 is not valid or is not entitled to be admitted to probate," then alternatively the application offered the 1991 will for probate. Here, because the district court was acting as a probate court, it had full probate jurisdiction, and also had the authority to exercise its powers as a court of general jurisdiction and could consider multiple wills. *Harkins v. Crews*, 907 S.W.2d 51, 56–57 (Tex.App.—San Antonio 1995, writ denied). In *Harkins*, the court observed that the action of the trial court furthered public policy of promoting judicial economy, and avoided a multiplicity of actions and encouraged resolutions in one proceeding. Accordingly, we hold that the filing of one application offering the 1993 will for probate, followed by the submission of the 1991 will for probate in the

alternative, did not constitute a will contest as a matter of law.

■ Whitmore also contends the trial court's finding that the "no contest clause" was not invoked is against the great weight and preponderance of the evidence. We disagree. In reviewing a factual sufficiency or great weight and preponderance issue, we must review the entire record to determine if there is some evidence to support the challenged finding. We must then determine whether, in light of the entire record, the challenged finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In reviewing the evidence, we accord due deference to the trial court which, as the trier of fact presented with conflicting testimony, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). In its role, the court could believe any one witness, disbelieve other witnesses, and resolve inconsistencies in the testimony of any witness as well as in the testimony of different witnesses in order to arrive at the facts the court deemed most reasonable under the evidence. *Id.*

Because of our determination that the application of Foster and Bell offering the 1993 will and, alternatively, the 1991 will for probate did not amount to a will contest as a matter of law, we must now review the record under the appropriate standard of review. The application to probate the 1993 will and, alternatively, the 1991 will, does not allege that the 1993 will was not entitled to probate. To the contrary, the application alleged that the 1993 will was a "fully executed, self-proved and *valid Will* . . . . " According to their application, Foster and Bell sought to probate the 1991 will only "if the will dated August 6, 1993 is not valid or is not entitled to be admitted to probate." Because

Foster and Bell did not contend that the 1993 will should not be admitted to probate by their application, we also review the reporter's record to complete our review.

■ Initially, we note that testamentary capacity, as distinguished from capacity to make a contract, *Hamill v. Brashear*, 513 S.W.2d 602, 607 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.), only requires a showing that at the time the will was executed, the testator had sufficient mental ability: (1) to understand the business in which he was engaged, *i.e.* the making of a will; (2) to understand the effect of making the will; (3) to understand the general nature and extent of his property; and (4) to know the natural objects of his bounty and the claims upon them. *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex.App.—Fort Worth 1998, no pet.).

The evidence here reflects that at the time she executed the 1993 will, Gertrude was residing in a rest home and was 91 or 92 years of age. During direct examination, Foster testified that he was not present when Gertrude executed the 1993 will, and after outlining some differences in the 1993 and 1991 wills, stated that it was not in his best interest that he contest the 1993 will. In her brief, Whitmore makes references to only four instances from the record contending that by his testimony, Foster impeached or contested the 1993 will; however, some of the references were to his cross-examination. The referenced portions of his testimony do not show that any questions were presented to Foster whereby he expressed any opinion as to his mother's testamentary capacity in accordance with the definition of testamentary capacity. Also, his testimony that he did not think his mother understood the will because she could not read due to impaired eyesight is not controlling for these purposes. Moreover, Whitmore acknowledged that Foster withdrew his challenge to testamentary capacity and stated that if the will had been read to his mother while the video tape was being made, he would not have objected to the will. However, because of the subjective nature of the questions and answers on cross-examination, and taking the questions and answers in context with his other testimony, we cannot say that the decision of the trial court that Foster did not contest the 1993 will by his testimony was erroneous.

■ Whitmore does not reference any portion of the record where she claims that Bell contested the will by her testimony, and we have found no such instances. Therefore, consideration being given to the rule that forfeiture provisions in a will are to be strictly construed and should be avoided if possible, *Matter of Estate of Hodges*, 725 S.W.2d 265, 268 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.), from our review of the entire record which includes a video tape of the attorney's explanation of the 1993 will and its execution, we conclude that although the evidence shows considerable differences among some family members which do not rise to the level of a will contest, there is some evidence to support the challenged finding of the trial court, and that finding is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Points of error one, two and three are overruled. Our disposition of these points pretermits our consideration of points four, five, six, seven and nine. *See* Tex.R.App. P. 47.1.

By her eighth point, Whitmore contends the trial court abused its discretion in determining that Foster and Bell were suitable executors. We disagree. By her 1993 will, Gertrude appointed Foster and Bell co-independent executors to serve without bond and also named Whitmore successor independent executrix in the event that both Foster and Bell were unable or unwilling to act as independent executors. After Foster and Bell filed their application to probate the 1993 will, and alternatively the 1991 will, Whitmore also filed her application to probate the 1993 will and requested that she be appointed independent executor alleging that

Foster and Bell had failed to properly offer the 1993 will for probate. Also, Whitmore filed a written objection to the issuance of letters testamentary to Foster and Bell, alleging they "are unsuitable pursuant to § 78, Texas Probate Code." However, her objection did not allege facts supporting the general allegation of unsuitability.

After a separate non-jury hearing, by separate order also signed July 16, 1998, the trial court denied Whitmore's objection that Foster and Bell were unsuitable and appointed them independent co-executors without bond and directed that letters testamentary be issued to them upon taking the oath as required by law. Among other things, the trial court order and the trial court's findings of fact and conclusions of law provided that Foster and Bell *are not disqualified* and were *"not unsuitable under Section 78 . . . . "*

Before reviewing the evidence applicable to Whitmore's contention, we first note that the point of error which asserts that the trial court abused its discretion in determining that Foster and Bell "were suitable executors" is not only contrary to the record of the findings of the trial court, but also would effectively misplace the appropriate burden of proof. As above noted, the trial court did not find that Foster and Bell were suitable but instead found they were "not unsuitable." This distinction is significant not only because the point is contrary to the record and determination of the trial court, but also the determination that they were "not unsuitable" follows the language of section 78(e) of the Probate Code.

■ This Court held in *In Re Estate of Roots*, 596 S.W.2d 240, 244 (Tex.Civ. App.—Amarillo 1980, no writ), that by enactment of section 77 of the Probate Code, the legislature recognized the "engrained right of a testator to appoint an independent executor by the provision for priority in the grant of letters testamentary to the executor named in the will." *See also Boyles v. Gresham*, 158 Tex. 158, 309 S.W.2d 50, 53 (1958). Also, when granting mandamus relief, in *Monson v. Betancourt*, 818 S.W.2d 499, 500 (Tex.App.—Corpus Christi 1991, no writ), the court held that in the absence of evidence that the applicant was unsuitable, the Probate Code mandates that letters testamentary be granted to qualified persons named in the will. Whitmore's challenge was based upon section 78(e) entitled "Persons Disqualified to Serve as Executor or Administrator," "a person whom the court finds *unsuitable.*" (Emphasis added). Accordingly, because Foster and Bell were designated as executors in the will, they had priority to serve under section 77 of the Probate Code, and Whitmore had the burden to demonstrate their unsuitability under section 78(e) of the Probate Code. *Id.* at 500; *see also Olguin v. Jungman*, 931 S.W.2d 607, 610 (Tex.App.—San Antonio 1996, no writ); *Powell v. Powell*, 604 S.W.2d 491, 493 (Tex.Civ.App.—Dallas 1980, no writ). The question presented to and determined by the trial court was the "unsuitability" of Foster and Bell, and Whitmore had the burden to establish their "unsuitability." Accordingly, because Whitmore does not challenge the findings that Foster and Bell were "not unsuitable," Whitmore's eighth point does not present an issue or point for our review. Tex.R.App. P. 38.1(e); *Northwest Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex.App.—Amarillo 1998, pet. denied).

■ Moreover, even if for purposes of our analysis the point attacks the trial court's finding that Foster and Bell were "not unsuitable," applying the appropriate burden of proof, we cannot conclude that the trial court abused its discretion in making such a finding. Whitmore correctly acknowledges that the ruling of the trial court is based on an abuse of discretion standard, and that to be an abuse of discretion, the act must be shown to be arbitrary or unreasonable. *Olguin*, 931 S.W.2d at 610, citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–

42 (Tex.1985). Because the Probate Code does not define "unsuitable," as used in section 78(e), and trial court discretion is implicated, the cases considering the provision do not establish a "bright line" test to be applied in making that determination. *See Boyles,* 309 S.W.2d at 53, where the Court declined to attempt to define the term "unsuitable"; *see also Dean v. Getz,* 970 S.W.2d 629, 633 (Tex.App.—Tyler 1998, no pet.).

The 1993 wills of W.N. Foster and Gertrude Foster both appointed Foster and Bell as independent executors and also contained a common provision that any loans made (no reference to gifts) to their children or grandchildren, whether barred by limitations, were to be forgiven. Any loans were to be treated as advancements for purposes of distribution. At the hearing, the evidence offered to establish "unsuitability" focused on Foster and Bell's alleged neglect in the performance of their duties as executors of their father's estate. By her brief testimony upon cross-examination, Whitmore claimed that the delay in offering their father's will for probate was a reason to demonstrate Foster and Bell's unsuitability. Also, she indicated that because Foster and Bell had not administered their father's estate according to her expectations, her only objection was that they would not do better in administering their mother's estate. However, she acknowledged that Foster and Bell could serve as executors, but implied whether they would carry out their duties as executors.

Because the wills of the parents provided that loans be forgiven and treated as advancements, the balances owing on loans required determination. The record shows that in 1972, the parents conveyed 320 acres by a gift deed to all six children in undivided interests.[3] Also, the parents conveyed another 320 acres to the six children, and retained a vendor's lien which was secured by a deed of trust, to secure the payment of a note in the amount of $76,800 bearing interest at 7% and payable in ten annual installments. Testimony regarding payment of the note, or whether payments were forgiven, was unclear due in part to the lapse of time and the nonexistence of any books and records. The evidence did not show whether the vendor's lien or deed of trust had been released. Although the testimony regarding title to the 640 acres conveyed to the children is unclear, it appears that some family members either exchanged, traded or sold certain undivided interests in the land, which also resulted in monetary transactions.

Bell testified that in 1993, all the children received a "transaction or loan" in the amount of $50,000 and that she owed $50,000. By her brief, Whitmore also acknowledges that she owes the estate $60,000; however, this record does not reflect whether the 1993 transfers to children were "loans or gifts." The evidence also included copies of letters exchanged between counsel for Foster and Bell and counsel for Whitmore. Following submission of a draft of an inventory and appraisement and list of claims in their father's estate, Whitmore claimed that Foster owed substantially more money than indicated. The letters also reflect that Whitmore's accountant may have had limited access to some of the records and efforts were made to resolve the problem relating to access to old records. Also, Bell and Foster engaged an accountant to try to reconstruct books and records through 1980. Whitmore, at her own expense, also retained an accountant to independently review the available records. From the information provided by the accountants, we conclude that the parents did not maintain a set of books or records, and that determination of the amounts of loans may require

---

**3.** *See Somer v. Bogart,* 749 S.W.2d 202, 204 (Tex.App.—Dallas 1988), *writ denied,* 762 S.W.2d 577 (Tex.1988) (per curiam), holding that the burden of proof in refuting the presumption of gift by a parent to a child is by clear and convincing evidence.

reconstruction of the history of the transactions from a variety of sources commencing in 1972, and possibly prior, until the deaths of both parents. Although the projections of the parties as to the balances of outstanding loans vary considerably, the evidence does show that all the children, including Whitmore, are or may be indebted to the estate. Because the only question before the trial court was the unsuitability of Foster and Bell to serve as executors of their mother's estate, determination of the amounts of outstanding loans was not an issue to be decided at the hearing on Whitmore's objection to the appointment of Foster and Bell.

In addition to requiring that executors file an inventory, appraisement and list of claims owing to the estate, section 256 of the Probate Code contemplates the filing of a supplemental inventory, section 257 authorizes the court to require the filing of an additional inventory upon the written claim of any interested person, and section 258 allows an interested person to file a complaint seeking a correction of an inventory. In addition to these remedies, section 149 provides that an independent executor may be required to give bond and may be required to provide a bond under section 149B.

Of the eight cases relied on by Whitmore in support of her position, the appellate courts affirmed six of the decisions of the trial court.[4] Of the two remaining cases, one appellate court reversed the decision of the trial court denying the application of the named executor and in the remaining case, the appellate court held that the trial court abused its discretion in granting letters testamentary.[5] Considering the following facts: (i) the parents did not maintain a set of books formal or otherwise, where the necessary information could be readily obtained; (ii) the time period of the examination is unlimited and may require review of financial and other records as far back as 1972, possibly before; (iii) Foster and Bell acknowledged some indebtedness; (iv) Foster and Bell were also serving as executors of their father's estate; (v) interested parties have remedies as above noted and otherwise; (vi) all children, including Whitmore, have or may have some indebtedness owing; and (vii) an independent executor named in a will is not unsuitable as a matter of law simply because he has a claim against the estate, *Boyles*, 309 S.W.2d at 54, we hold that the trial court did not abuse his discretion and his ruling denying Whitmore's motion to disqualify Foster and Bell was not arbitrary or unreasonable. Point of error eight is overruled.

Accordingly, the order of the trial court dated July 16, 1998, probating the will and authorizing letters testamentary, and appointing Foster and Bell as independent co-executors, which provides among other things, that neither Billy Joe Foster nor Marcia Foster Bell had invoked the "no contest clause" of the 1993 will, and the order also dated July 16, 1998, denying Barbara Trimble Whitmore's objection to the appointment of Foster and Bell as independent co-executors and authorizing issuance of letters testamentary are affirmed.

---

**4.** *Dean v. Getz*, 970 S.W.2d 629 (Tex.App.—Tyler 1998, no pet.); *Spies v. Milner*, 928 S.W.2d 317 (Tex.App.—Fort Worth 1996, no writ); *Ayala v. Martinez*, 883 S.W.2d 270 (Tex.App.—Corpus Christi 1994, writ denied); *Formby v. Bradley*, 695 S.W.2d 782 (Tex. App.—Tyler 1985, writ ref'd n.r.e.); *Hitt v. Dumitrov*, 598 S.W.2d 355 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); and *Haynes v. Clanton*, 257 S.W.2d 789 (Tex.Civ. App.—El Paso 1953, writ dism'd by agr.).

**5.** *In re Estate of Vigen*, 970 S.W.2d 597 (Tex. App.—Corpus Christi 1998, no pet.); and *Bays v. Jordan*, 622 S.W.2d 148 (Tex.App.—Fort Worth 1981, no writ).