6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00130-CR
______________________________




EX PARTE TERRY LEWIS MILLER




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Habeas Corpus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Terry Lewis Miller has filed an original application for post-conviction relief pursuant to
Chapter Eleven of the Texas Code of Criminal Procedure. Miller was convicted in Gregg County
for unlawfully possessing a firearm while a felon. See Tex. Pen. Code Ann. Â§ 46.04 (Vernon Supp.
2004â2005). We recently affirmed that conviction on direct appeal. See Miller v. State, No. 06-03-00180-CR, 2004 Tex. App. LEXIS 1917 (Tex. App.âTexarkana Feb. 27, 2004, pet. ref'd) (mem.
op.) (not designated for publication).
Â Â Â Â Â Â Â Â Â Â Â Â Miller presented his habeas application in this case in conjunction with his application for
writ of habeas corpus in a companion case, Ex parte Terry Lewis Miller, No. 06-04-00129-CR. The
issues and factual allegations raised in that application are identical to those Miller raises in this case. 
Since the applications for writs of habeas corpus, as well as the arguments raised therein, are
identical in both applications, for the reasons stated in Ex parte Terry Lewis Miller, No. XX-XXXXXXX-CR, we dismiss this case for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â September 9, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â September 10, 2004

Do Not Publish



SPAN>

 The order entered by the court denied the application of Richard for the probate of the will
of Sarah. It also made evidentiary findings (1) that the disclaimers of Richard and Jeanetta "were
in substantial compliance with Section 37A of the Texas Probate Code," (2) that the disclaimers were
signed knowingly and voluntarily by them, and (3) that Richard was an unsuitable person to act as
executor because of demonstrated violations of his fiduciary duties to Charles and Sarah and it would
be improper to name him because of discord and animosity between him and other relatives of Sarah. 

JURISDICTION OVER APPEAL

 Neither party raised any question of whether this Court has jurisdiction over this appeal and
at oral arguments, both maintained that this is an appealable order. Despite that, the first inquiry an
appellate court must make in any case is whether it has jurisdiction to consider the appeal. See
Materials Evolution Dev. USA, Inc. v. Jablonowski, 949 S.W.2d 31, 33 (Tex. App.--San Antonio
1997, no pet.); McClennahan v. First Gibraltar Bank F.S.B., 791 S.W.2d 607, 608 (Tex.
App.--Dallas 1990, no writ). If the appellate court lacks jurisdiction, the appeal must be dismissed.
See Jablonowski, 949 S.W.2d at 33; McClennahan, 791 S.W.2d at 608. Generally, appellate
jurisdiction exists only in cases in which a final judgment has been rendered that disposes of all
issues and parties in the case. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 268 (Tex. 1992). 
It is fundamental error for an appellate court to assume jurisdiction over an interlocutory appeal
when it is not expressly authorized by statute. See New York Underwriters Ins. Co. v. Sanchez, 799
S.W.2d 677, 678-79 (Tex. 1990).

 Section 5(g) of the Texas Probate Code provides that "[a]ll final orders of any court
exercising original probate jurisdiction shall be appealable to the courts of appeals." Tex. Prob.
Code Ann. § 5(g) (Vernon Supp. 2008). However, other than certain provisions in the Code that
certain orders are final and appealable (e.g., Tex. Prob. Code Ann. Â§ 55(a) (Vernon 2003), which
declares a determination of heirship to be final and appealable), the Probate Code does not clarify
which orders are final and appealable. Young v. First Cmty. Bank, N.A., 222 S.W.3d 454, 456 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). 

 As a general rule, appeals are only available from a final judgment. Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 195 (Tex. 2001). Similarly, except when "specially provided by law," there
may be but "one final judgment" rendered in any cause. Tex. R. Civ. P. 301. However, Texas law
has long recognized that probate proceedings may involve multiple judgments "on certain discrete
issues," each of which may be "final for purposes of appeal." De Ayala v. Mackie, 193 S.W.3d 575,
578 (Tex. 2006). 

 In the case before us, although the application of Richard (named in the will of Sarah to serve
as independent executor without bond) to be appointed executor was rejected, there was no personal
representative of the estate of Sarah appointed. (3) The right to serve as the executor of an estate is a
"substantial right" and a denial of that right is a final and appealable order. In re Estate of Vigen, 970
S.W.2d 597, 599 (Tex. App.--Corpus Christi 1998, no pet.). To be appealable, the order only has
to finally dispose of the issue or controverted question for which that particular part of the
proceeding was brought. Tex. Prob. Code Ann. Â§ 5(g); Taliaferro v. Tex. Commerce Bank, 660
S.W.2d 151, 153 (Tex. App.--Fort Worth 1983, no writ). Thus, a probate order is appealable if it
"finally adjudicates a substantial right." Spies v. Milner, 928 S.W.2d 317, 318 (Tex. App.--Fort
Worth 1996, no writ); Vineyard v. Irvin, 855 S.W.2d 208, 210 (Tex. App.--Corpus Christi 1993,
no writ).

 We determine that the order denying Richard's application to serve as independent executor
was the determination of a substantial right and, as such, was a final and appealable order which we
have jurisdiction to review.

DISPOSITION OF FIRST THREE POINTS OF ERROR

 Richard's first three points of error maintain (1) that the trial court erred in finding that
Richard had refused to serve as executor or resigned as executor pursuant to Section 76 of the Texas
Probate Code; (2) that the trial court erred in finding that a disclaimer executed by Richard pursuant
to Section 37A of the Texas Probate Code barred Richard from appointment as executor; and (3) that
the trial court erred in finding that Richard had waived his right to appointment as executor by
signing the disclaimer. However, there is neither anything in the order signed by the trial court nor
in the findings of fact and conclusions of law which makes any of these findings. Rather, the trial
court found Richard as "unsuitable" to serve as independent executor and that appointment of him
would be "improper." Therefore, we overrule these points of error.

RULING ON UNSUITABILITY TO SERVE

 In determining the identity of persons who are disqualified to serve as executor or
administrator of an estate, Section 78(e) of the Texas Probate Code adds in the catch-all provision
that a person is disqualified to serve if the applicant for letters is "[a] person whom the court finds
unsuitable." Tex. Prob. Code Ann. Â§ 78(e) (Vernon 2003). The term "unsuitable" is not defined. 

 Richard challenges the legal sufficiency of the evidence for the finding that he is unsuitable
to serve as executor of the estate. However, as in Zorilla v. Wahid, 83 S.W.3d 247, 252 n.1 (Tex.
App.--Corpus Christi 2002, no pet.), we follow the majority of courts in concluding that "when the
trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal
sufficiency of the evidence review is part of the abuse of discretion review and not an independent
ground for reversal." Id. (citing, e.g., Crawford v. Hope, 898 S.W.2d 937, 940-41 (Tex.
App.--Amarillo 1995, writ denied); Thomas v. Thomas, 895 S.W.2d 895, 898 (Tex. App.--Waco
1995, writ denied); In re Driver, 895 S.W.2d 875, 877 (Tex. App.--Texarkana 1995, no writ)); see
Handley v. Handley, 122 S.W.3d 904, 907 (Tex. App.--Corpus Christi 2003, no pet.) (division of
property reviewed for abuse of discretion). A court's ruling on a probate application is generally
reviewed under an abuse of discretion standard. See In re Estate of Robinson, 140 S.W.3d 801, 807
(Tex. App.--Corpus Christi 2004, pet. dism'd) (reviewing order finding person unsuitable to serve
as executor under an abuse of discretion standard); Olguin v. Jungman, 931 S.W.2d 607, 610 (Tex.
App.--San Antonio 1996, no writ) (reviewing order finding person unsuitable to serve as executor
under an abuse of discretion standard). The trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles. Cire v. Cummings, 134
S.W.3d 835, 838-39 (Tex. 2004). The mere fact a trial judge may decide a matter within his
discretionary authority in a different manner than an appellate judge in a similar circumstance does
not demonstrate an abuse of discretion has occurred. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985). Under an abuse of discretion standard of review, we must make an
independent inquiry of the entire record to determine if the trial court abused its discretion and are
not limited to reviewing the sufficiency of the evidence to support the findings of fact made. See
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 853 (Tex. 1992) (orig. proceeding).

 The lack of a definition of "unsuitable" in the Probate Code leaves the implication that the
trial court has discretion in making that determination. In re Estate of Foster, 3 S.W.3d 49, 55 (Tex.
App.--Amarillo 1999, no pet.) ("[T]he cases considering the provision do not establish a 'bright line'
test to be applied in making that determination."). 

 Here, the trial court was presented substantial evidence regarding Richard's suitability to
serve as executor of the estate.

 Some of this evidence is found in the testimony of Dee; he said that Richard had told him that
it was Richard's intention while attorney-in-fact for Charles and Sarah to transfer all of their property
into his (Richard's) name. When Dee protested this, Richard responded that there was nothing Dee
could do to prevent it. Dee testified that on another occasion, Charles had been upset because he had
signed papers at Richard's request, but did not know what the documents were; as it developed, the
papers were a collateral pledge of Charles's $12,000.00 certificate of deposit to guarantee a loan for
Richard's daughter to purchase a house. In another incident, Dee discovered that Richard was
intending to sell a tract of 127 acres to Charles for $65,000.00. Dee protested that Charles neither
needed the property nor possessed the ability to even know how to locate it. Richard responded that
if Charles did not buy the land, he (Richard) would lose it through foreclosure. Richard continued
the personal use of the tract of land after the sale and the Borens subsequently deeded him forty acres
of it as a gift. 

 In addition, there was testimony from Randy Boren, Charles's nephew and one-time guardian. 
Randy testified that Richard had confiscated Charles's tools and equipment for his own use and that
while Randy was Charles's guardian, Richard had refused to provide records and receipts of his
activities as attorney-in-fact for Charles, a responsibility he held. (4) 

 When Parks assumed the guardianship of Charles, she discovered that Richard had not paid
the fees for Charles's nursing home care for some three months and that the account was some
$9,000.00 in arrears. Parks also discovered that during the period commencing on JanuaryÂ 3, 2002
through December 31, 2004, there had been automatic teller machine withdrawals from Charles's
and Sarah's accounts totaling $5,271.75, despite the fact neither Charles nor Sarah knew how to use
an automatic teller machine. She found further discrepancies in that Richard had written checks over
that same period of time totaling $1,890.22 for fuel and "blank" checks for $38,015.21 in addition
to cash withdrawals amounting to $19,115.94. Despite the fact that Charles and Sarah owned no
livestock, there was $5,730.00 spent on cattle and $2,734.07 on tractor repairs, although Charles and
Sarah had no tractor. The implication was that Richard had both cattle and a tractor and that he had
converted these funds to his own use. Although Charles and Sarah had no outstanding notes upon
which to make payments, Richard wrote checks aggregating $5,521.71 with the notation that they
were for note payments. 

 Taking this testimony into account, there was evidence for the trial court to find Richard
unsuitable to be named as executor and that Richard had breached his fiduciary duty in his use of
power of attorney for Charles. The finding that Richard was unsuitable to serve as independent
executor was no abuse of discretion. Accordingly, we overrule Richard's fourth and fifth points of
error which challenge those findings. 

IS DISCLAIMER EFFECTIVE PURSUANT TO SECTION 37A OF THE TEXAS PROBATE
CODE?


 Richard's sixth point of error claims the trial court erred in finding the "waiver" (i.e.,
disclaimer) documents signed by Richard and Jeanetta were sufficient to constitute disclaimers of
interest by them to inheritance under the estate of Sarah pursuant to Section 37A of the Texas
Probate Code. Richard's seventh point of error claims there was legally insufficient evidence to
support this finding. 

 We may sustain a legal sufficiency challenge only when (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998).

 The trial court's order found "that the Waivers filed by Richard and Jeanetta Finley were in
substantial compliance with Section 37A . . . . and that the clear language of the Waivers along with
the conversations Richard Finley had with other Boren family members evidenced a clear intent to
waive or disclaim their interest in either the Charles or Sarah E. Boren estates, by will, inheritance,
right of survivorship, or otherwise." The order went further to find that "the Waivers were not
ambiguous" and point out that Richard had the waivers (disclaimers) reviewed by his attorney before
signing; and finally, found that "the Waivers were voluntarily executed." (5)

 As previously mentioned, the pertinent portion of the disclaimers signed by Richard and
Jeanetta said, "I hereby waive any interest or claim I have or may have in or against their [Charles's
and Sarah's] respective estates by will, inheritance, right of survivorship, or otherwise." 

 The documents were titled "Waiver of Service, Waiver of Interest, and Approval and Consent
to Sale of Real Property." Following the language quoted above, the documents went on to reflect
that the signors waived citation and service and did not object to guardian Parks's pending
application in the Charles Boren guardianship to sell real property. 

 The effect of a disclaimer under Section 37A (6) of the Texas Probate Code is that the
disclaiming party is treated as having "predeceased the decedent." Tex. Prob. Code Ann. Â§Â 37A(c)
(Vernon Supp. 2008). (7) Therefore, if the disclaimers signed by Richard and Jeanetta were effective,
the devises to them as contained in Sarah's will would lapse; neither Richard nor Jeanetta were
Sarah's lineal descendants and the will contained no other contingent beneficiaries. Therefore, if the
disclaimers were effective and operative, the only practical effect of the last will and testament of
Sarah would be to designate the appointment of an independent executor (or executrix) to serve
without bond; her assets would pass to all of her heirs-at-law.

 Section 37A(h) (8) of the Texas Probate Code contains rather detailed requirements concerning
the filing of such disclaimers. As pertains to our circumstances in this case, a simplistic summary
of the requirement for filing a disclaimer dictates that:

 (1) If there is an action in probate pending on the decedent, then the disclaimers are to
be filed in that probate action unless it is an independent administration and more than a year has
passed since the issuance of letters; 


 (2) If there is no probate action pending on the estate of the decedent or if the estate is
an independent administration wherein more than a year has passed since the appointment of an
administrator then:


 (a) If the decedent was a Texas resident, then it is to be filed with the county clerk
of the county of residence of the decedent.


 (b) If the decedent was not a Texas resident and the decedent had an interest in
real property in Texas, the disclaimer is to be filed "with the county clerk of the county in
which such real property or interest therein is located." It then goes on to say that the
disclaimer is to be "recorded by such county clerk in the deed records of that county." 


See Tex. Prob. Code Ann. Â§ 37A(h) (Vernon Supp. 2008). 

 On the same day that Sarah died, (9) Richard and Jeanetta filed revocations of these purported
disclaimers. These documents of revocation were filed with the county clerk of the county of Sarah's
residence.

 Section 37A(k) (10) of the Texas Probate Code is the portion of the statute dealing with the
revocability of a disclaimer. It provides that, "Any disclaimer filed and served under this section
shall be irrevocable." Tex. Prob. Code Ann. Â§ 37A(k) (Vernon Supp. 2008) (emphasis added).

 There is no evidence that the filing requirement of the original disclaimers was ever met and
until the disclaimers had been properly filed, they remained revocable. Rather than being filed in
accord with the Texas Probate Code, they were filed in the papers of the guardianship of Charles. 
To compound the constructive notice problem this filing deficiency would provide to potential
creditors or subsequent purchasers, because Charles had died, the guardianship was, for most
purposes, no longer effective; the only power the person named as guardian had at that time was to
submit a final accounting and conclude the guardianship. See In re Guardianship of Moon, 216
S.W.3d 506, 510 (Tex. App.--Texarkana 2007, no pet.); In re Estate of Glass, 961 S.W.2d 461, 462
(Tex. App.--Houston [1st Dist.] 1997, writ denied); see also Tex. Prob. Code Ann. Â§ 745(a)(2)
(Vernon Supp. 2008). Therefore, the purported disclaimers were filed in a case file which had (so
far as any action other than closing the guardianship and dismissing the guardian) become moribund. Under the statute, once the proper filing and service of the disclaimer occurs, alea jacta est; (11)
it then becomes irrevocable. Because Richard and Jeanetta revoked their disclaimers before the
disclaimers signed by them had been properly filed, they were effectively revoked. Accordingly,
despite the fact that the form of the disclaimers was sufficient to satisfy the statute, irrespective of
the intention they held to disclaim inheritance under Sarah at the time they were signed, and
regardless of their expressed desires to heal the rift within the family, they were no longer operative
after the revocation occurred. 

 We recognize that Section 37A(h) of the Texas Probate Code (which deals with filing of the
memorandum of a disclaimer) is not a paragon of clarity. It first plainly states that disclaimers are
to be filed "in the probate court in which the decedent's will has been probated or in which
proceedings have been commenced for the administration of the decedent's estate or which has
before it an application for either of the same." Then, contemplating circumstances under which no
administration is currently active, it enumerates five different circumstances (12) wherein there is no
active administration of an estate and says simply that in those circumstances, disclaimers "shall be
filed with the county clerk of the county of the decedent's residence" without specificity of the
particular records in the office of the clerk where these disclaimers would be recorded by the clerk. 
Then, in the same sentence, it provides that "if the decedent is not a resident of this state but real
property or an interest therein located in this state is disclaimed, a written memorandum of
disclaimer shall be filed with the county clerk of the county in which such real property or interest
therein is located, and recorded by such county clerk in the deed records of that county." Pointing
out that distinction, but ignoring the distinction between filing and recording, Matney maintains that
in this case, "there was no requirement that the waiver be filed in the deed records" (with the
supposed corollary that so long as it has been presented to the clerk and is on file anywhere in the
office of the clerk, the requirement of the statute is satisfied). 

 From the early days of Texas jurisprudence, the recognized object of the filing and recording
statutes has been to provide a means of constructive notice of the existence of a document to
creditors and subsequent purchasers. Evans v. Templeton, 69 Tex. 375, 6 S.W. 843, 844 (1887). 

 One needs to recognize that at one time, county clerks had the obligation to maintain separate
books and records for deeds, deeds of trust, mechanics liens, etc. However, since substantial
statutory changes were made to the prescribed duties of county clerks in 1989, there is no duty of a
county clerk to maintain a separate set of "deed records." (13) Under the statutory scheme in use today,
a county clerk may consolidate records together and record, index, or classify them as one of seven
different types of records, none of which is called "deed records." Tex. Loc. Gov't Code Ann.
Â§Â§Â 193.001(a), 193.008(d). If one were to adhere to the kind of strict interpretation of Section
37A(h) of the Texas Probate Code Matney suggests, since there are no longer "deed records" in
existence in those counties which do not separate the various kinds of documents, there would be
no lawful place for the clerk to record the disclaimers of those who would disclaim inheritance under
a nonresident. The reason a distinction was made in the Texas Probate Code between disclaimers
involving nonresident and resident decedents is because the estate of a nonresident's personal
property is governed by the laws of the state of residence of the decedent while the descent of the
real property would be governed by the laws of Texas. Waterman v. Charlton, 102 Tex. 510, 120
S.W. 171, 172 (1909). On the other hand, a Texas resident decedent may have died possessed of
only personal property (or the disclaimer may have been a partial disclaimer, pertaining only to
personal property and not real estate). Therefore, the property disclaimed in the estate of a Texas
decedent might have been only personalty and could have been finally recorded by the clerk in
something other than the real property records. 

 We determine that when Section 37A(h) of the Texas Probate Code uses the phrase "shall
be filed with the county clerk," it is to mean the kind of filing with a county clerk for recordation by
the clerk in its records, such as in the Official Public Records of Real Property, in the Official Public
Records of Personal Property and Chattels, or in the Official Public Records of Governmental,
Business, and Personal Matters. (See Tex. Loc. Gov't Code Ann. Â§Â§ 193.001, 193.008(b)). That
never occurred here. 

 The obvious purpose of the requirement that the disclaimers be filed is twofold: (1) to
finalize the act of disclaimer and (2) to provide notice to creditors or subsequent purchasers of the
fact that a disclaimer has occurred. Here, the disclaimers were filed in a guardianship proceeding
of someone other than the deceased person under whom inheritance was being disclaimed. Such a
filing would not be effective to place a person on notice that the disclaimer existed. Therefore, it
was not a filing contemplated in Section 37A of the Texas Probate Code. 

 Accordingly, we reverse the implied order of the trial court that the disclaimer signed by
Richard effectively barred him from inheritance from Sarah and remand the cause to the trial court
for further proceedings.



 Bailey C. Moseley

 Justice


Date Submitted: August 13, 2008

Date Decided: October 3, 2008

1. In re Estate of Boren, No. 06-07-00104-CV, 2008 Tex. App. LEXIS 6682 (Tex.
App.--Sept.Â 4, 2008, no pet. h.).
2. See Tex. Prob. Code Ann. Â§ 485 (Vernon 2003).
3. There was no ruling on the admissibility of the will of Sarah for probate in the order and
there was no application for letters testamentary filed by Jeanetta.
4. An attorney-in-fact under a durable power of attorney has a duty to keep and maintain
records of its activities and to account for those activities. Tex. Prob. Code Ann. Â§ 489 (Vernon
2003).
5. We note that the order makes no specific finding that they are barred from inheritance by
these disclaimer documents although one can infer that effect from the wording of the order. 
However, since all of the parties take the position that this was the effect of the order, we indulge
in that inference. This inference cannot be extended to the interest of Jeanetta, however. Although
she was a witness in the hearing on Richard's application, there is nothing to show that she was made
a party to this action.
6. Section 37A of the Texas Probate Code is that which deals with disclaimers of inheritance
from decedents. On September 1, 2007 (after trial but before this matter was presented to us on
appeal), Section 37A was amended. As to the pertinent portions of this statute, there is no
substantial change in the law. (See Act of May 15, 2007, 80th Leg., R.S., ch. 1170, Â§ 3.01, 2007
Tex. Gen. Laws 4000, 4001-03). However, the relevant portions under discussion herein were not
substantially changed. For clarity and the convenience of the future readers of this opinion,
references in this opinion to Section 37A are to the post-amendment status of the law and not to the
law as it existed at trial. 
7. Formerly Section 37A, Texas Probate Code with the same wording.
8. Formerly Section 37A(a), Texas Probate Code with the same wording.
9. Although it was the same date, there is nothing to show whether this was done before or
after Sarah's death on that date. 
10. This was formerly in Section 37A(d) of the Texas Probate Code prior to the 2007
amendment; the relevant wording is identical. 
11. "The die is cast." (The phrase supposedly uttered by Caesar upon crossing the Rubicon
River with his army.)
12. (1) if the administration of the decedent's estate is closed, or (2) after the expiration of one
year following the date of the issuance of letters testamentary in an independent administration, or
(3) if there has been no will of the decedent probated or filed for probate, or (4) if no administration
of the decedent's estate has been commenced, or (5) if no application for administration of the
decedent's estate has been filed.
13. Tex. Loc. Gov't Code Ann. Â§Â§ 193.002(a), 193.003, 193.008, 193.009 (Vernon 2008).