

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00356-CV

———————————————

IN THE ESTATE OF WYNELL N. KLUTTS, DECEASED

On Appeal from the County Court
Hood County, Texas
Trial Court No. P08257

Before Sudderth, C.J.; Gabriel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth
Concurring and Dissenting Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

## I. Introduction

In four issues in this dueling-wills case, Appellants Jan Margaret McKee, Donna Vick, and Paula Fuqua appeal the trial court's summary judgment for their stepbrother, Appellee Michael O. Kornegay. We reverse and remand.

## II. Factual and Procedural Background

Fred and Wynell Klutts married in 1959; Michael was Wynell's son from a prior marriage, and Jan, Donna, and Paula were Fred's daughters from a prior marriage. Fred died in August 2007. Wynell died nine years later.

Between August 2007 and August 2016, Wynell executed four wills—two in 2007, one in 2008, and one in 2010.

In the first two wills, Wynell devised everything equally to the four children and appointed Michael and Jan as co-executors. In 2007, she also appointed Michael and Jan as her agents under a medical power of attorney and as attorneys in fact in a durable general power of attorney instrument that required them to act jointly or to agree in writing to exercise such authority separately. And Wynell executed a "Declaration of Guardian" that expressly disqualified Donna and Paula from serving as her guardian in the event that she someday needed one. From December 2007 to April 2008, Wynell transferred assets worth over $6.4 million—approximately $1.6 million each—to Jan, Donna, Paula, and Michael.

Wynell executed a third will on July 24, 2008, in which she left everything to Michael and Jan in equal shares and stated that she had "deliberately made no provision herein for the benefit of [her] stepdaughters[] Donna . . . and Paula . . ., for good and sufficient reasons which [she did] not care to enumerate herein."[1] She appointed Michael as her executor, with Jan to be her executor only if Michael predeceased Wynell, resigned, or became legally incompetent to act as executor.

Almost two years later, in April 2010, Wynell executed a statutory durable power of attorney appointing Michael as her sole attorney in fact. Six months after that, in October 2010, she executed another will, in which she devised 78% of a limited partnership to Michael, the remaining 22% to Jan, and everything else to Michael. In the 2010 will, she named Michael as her executor and Donald L. Barley, who prepared both the 2008 and 2010 wills, as the successor executor.

After Wynell died in August 2016, Jan, Donna, and Paula sought to admit the 2007 will to probate. Michael challenged it, arguing that Wynell's 2008 and 2010 wills had revoked the 2007 will, and he sought to admit Wynell's 2010 will to probate.[2] In

---

[1]When Wynell's previous attorney noted his concern about Wynell's expressed desire to disinherit Paula and Donna, Michael engaged a different attorney to draft the 2008 will.

[2]Prior to this case's submission, we asked the parties to explain how this court had jurisdiction when the trial court's summary judgment order did not appear to be final. Both parties responded that the trial court's summary judgment became final and appealable after Michael nonsuited his application to probate Wynell's 2010 will as a muniment of title. Michael stated in his contest to Jan's appointment and his application to probate the will as a muniment of title that Wynell had property—cash,

3

support of Jan as executor of Wynell's estate, Donna and Paula raised two grounds: undue influence by Michael and Wynell's lack of testamentary capacity with regard to the 2008 and 2010 wills.[3]

Michael filed a traditional and no-evidence motion for partial summary judgment. In the traditional portion of his motion, he argued that the 2007 will was revoked by the 2008 and 2010 wills, both of which, he stated, were consistent with Wynell's desires when made, affirmatively negating an essential element of undue influence.[4] In the no-evidence portion of his motion, he argued that there was no

---

household items, clothing, and personal effects—worth less than $10,000 at the time of her death.

[3]Testamentary capacity requires that the testator, at the time the will is executed, must have sufficient mental ability to understand she is making a will, the effect of making the will, and the general nature and extent of her property; to know her next of kin and the natural objects of her bounty and the claims upon them; and to have sufficient memory to collect in her mind the elements of the business transacted and hold them long enough to perceive their obvious relation to each other and form a reasonable judgment about them. *Estate of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *8 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.); *Tieken v. Midwestern State Univ.*, 912 S.W.2d 878, 882 (Tex. App.—Fort Worth 1995, no writ).

[4]A claim of undue influence requires proving the existence and exertion of an influence; that the influence operated to subvert or overpower the testator's mind when executing a document; and that the testator would not have executed the document but for the influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Influence is not "undue" unless the testator's free agency is destroyed and a testament produced that expresses the will of the one exerting the influence. *Id.* (explaining that undue influence is separate and distinct from testamentary incapacity; "while testamentary incapacity implies the want of intelligent mental power, undue influence implies the existence of a testamentary capacity subjected to and controlled by a

4

evidence to support each of the elements of undue influence with regard to the 2008 and 2010 wills.

In their response to Michael's motion, Jan, Donna, and Paula reminded the trial court that based on Michael's fiduciary relationship with his mother, he bore the burden of proof to show the absence of undue influence with regard to the 2008 and 2010 wills, preventing a no-evidence summary judgment in his favor. They directed the trial court to evidence that Michael had been Wynell's attorney in fact, had taken over Wynell's financial affairs after Fred died, and had drained what assets were left after various distributions to all four children until—in 2016—Wynell had less than $10,000 in her estate; that when Wynell's probate attorney had declined involvement in drafting the 2008 will, Michael had engaged Barley to do it; and that when Wynell executed the 2008 will, she was taking large amounts of medication on a daily basis and was ultimately diagnosed with dementia and Alzheimer's, calling into question her testamentary capacity to execute both the 2008 and 2010 wills.

The trial court granted summary judgment for Michael on the traditional ground with regard to the 2007 will's revocation by the 2008 will and on the no-evidence ground regarding undue influence. In its order, the trial court made no ruling about which of the remaining wills would be admitted to probate and referred to the 2008 will as "the purported will dated July 24, 2008." The order also contained

domina[n]t influence or power"). The burden of proving undue influence is generally upon the person contesting the document's execution. *Id.*

a Mother Hubbard clause, stating that "[a]ll relief sought by Michael Kornegay in his First Amended Motion for Partial Summary Judgment filed June 5, 2018 not expressly granted herein is DENIED." The trial court then signed an order severing the claims disposed of by summary judgment into a new cause number.[5]

## III. Discussion

In their first and third issues, Jan, Donna, and Paula argue that the trial court erred by granting the no-evidence portion of Michael's motion because Michael was the party with the burden of proof and by granting the traditional portion of Michael's motion because he did not conclusively prove that Wynell had testamentary capacity when she executed the 2008 will.[6]

---

[5]In his appellee's brief, Michael contends that his stepsisters failed to properly invoke our jurisdiction because although the trial court severed the matters decided by summary judgment into a new cause number, his stepsisters filed their notice of appeal in the original cause number. We disagree. *See Blankenship v. Robins*, 878 S.W.2d 138, 139 (Tex. 1994) (per curiam) (providing that "the decisions of the courts of appeals [should] turn on substance rather than procedural technicality"); *George v. Compass Bank*, No. 04-15-00676-CV, 2016 WL 7119053, at *4 (Tex. App.—San Antonio Dec. 7, 2016, pet. denied) (mem. op. on reh'g) ("Even though the notice of appeal bears the original cause number, we hold the notice of appeal was a bona fide attempt to invoke our jurisdiction, and we have jurisdiction to consider this appeal."); *Butler v. Whitten*, No. 02-13-00306-CV, 2014 WL 24232, at *2 (Tex. App.—Fort Worth Jan. 2, 2014, no pet.) (mem. op. on reh'g) ("If there is no suggestion of confusion regarding which judgment the appellant appeals, the misnumbering [of the trial court cause number] should not defeat the appellate court's jurisdiction.").

[6]Because Jan, Donna, and Paula's first and third issues are dispositive, we do not reach their second and fourth issues. *See* Tex. R. App. P. 47.1.

## A. Burden of Proof in No-Evidence Summary Judgment Context

With regard to a no-evidence motion for summary judgment, after an adequate time for discovery, the party *without the burden of proof* may move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i); *see Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.) (holding that because defendant had burden of proof on affirmative defense, she could not properly move for no-evidence summary judgment on that ground); *Reyes v. Saenz*, 269 S.W.3d 675, 676–77 (Tex. App.—San Antonio 2008, no pet.) (op. on reh'g) (holding that trial court erred by granting no-evidence summary judgment to plaintiffs on their own claim); *see also Estate of Danford*, 550 S.W.3d 275, 282 (Tex. App.—Houston [14th Dist.] 2018, no pet.); Hon. David Hittner & Lynne Liberato, *Summary Judgments in Texas: State & Federal Practice*, 60 S. Tex. L. Rev. 1, 18 (2019) ("If a party has the burden of proof on claims or defenses, it may not properly urge a no-evidence summary judgment to challenge those claims or defenses."). In their first issue, Jan, Donna, and Paula argue that because Michael was an undisputed fiduciary, he bore the burden of rebutting the presumption of unfairness, making improper the trial court's grant of his no-evidence motion on undue influence.[7]

---

[7]Jan, Donna, and Paula also argue in their first issue that the trial court erred by granting Michael's no-evidence motion on testamentary capacity, but the trial court did not grant Michael's no-evidence motion on that ground. Accordingly, we overrule this portion of their first issue.

The person challenging the validity of an instrument generally bears the burden of proving the elements of undue influence by a preponderance of the evidence. *Quiroga v. Mannelli*, No. 01-09-00315-CV, 2011 WL 944399, at *5 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.); *see Rothermel*, 369 S.W.2d at 922 ("The burden of proving undue influence is upon the party contesting [the will's] execution."). This general rule applies to transfers from parent to child. *Quiroga*, 2011 WL 944399, at *5. Such transfers, standing alone, do not give rise to a presumption of undue influence, leaving the burden with the party challenging the transaction's validity. *See id.*[8] This is because "nothing is more common or natural than for a

---

[8]In *Quiroga*, the decedent's ex-wife challenged the decedent's having replaced her on a joint bank account with his adult daughter, who the ex-wife alleged had exercised undue influence in accomplishing the transaction. 2011 WL 944399, at *1. Our sister court, in the memorandum opinion authored by Justice Jane Bland, now a justice on the Supreme Court of Texas, held that the burden to prove no undue influence under the facts of the case did not shift to the decedent's daughter, relying on *Gates v. Asher*, 280 S.W.2d 247, 250 (Tex. 1955). *Id.* at *5. In *Gates*, the respondent had complained in the intermediate court about the trial court's refusal to submit an issue on the question of undue influence exerted by the petitioner over her mother in procuring a deed's execution. 280 S.W.2d at 250. The supreme court stated that the intermediate court had properly overruled that complaint because a deed from a parent to a child does not give rise to the presumption of undue influence and because the respondents, who had retained the burden of proof on the issue, did not refer to any evidence other than the mother's frail, enfeebled condition and the fact that the petitioner had lived with her off and on for a number of years. *Id.* The court further noted that "the presumption of fraud or undue influence under certain circumstances where the grantee occupies a confidential or fiduciary relationship to the grantor" was not a rule that applied "to the transaction between a mother and daughter." *Id.*; *see also Saufley v. Jackson*, 16 Tex. 579, 587 (1856) (holding that, as to deed from mother to daughter, "every presumption is in favor of the validity and fairness of the deed" and that "to set aside the deed so made by the mother, it must be proven without the aid of presumption, that she had been fraudulently practiced

8

[parent] to bestow gifts upon his [or her] children." *Hager v. Hager*, 127 S.W.2d 234, 238 (Tex. App.—Eastland 1939, no writ); *see Beville v. Jones*, 11 S.W. 1128, 1130 (Tex. 1889) (explaining that "[i]n the case of a gift from a child to the parent[,] undue influence may be inferred from the relation itself; but never where the gift is from the parent to the child, and no suspicion whatever attaches to the latter," but adding that "there is no doubt that upon proof of the actual exercise of undue influence it may be set aside").

However, in cases involving fiduciary relationships, a presumption of undue influence may arise, requiring the person receiving the benefit to prove the fairness of the transaction. *See Danford*, 550 S.W.3d at 281–82; *Quiroga*, 2011 WL 944399, at *5; *Price v. Taliaferro*, 254 S.W.2d 157, 163 (Tex. App.—Fort Worth 1952, writ ref'd n.r.e.) (noting that when "the ground of . . . undue influence is plead[ed], as in this case, against the devisee who occupies a confidential or fiduciary relation to the maker of the instrument, the burden rests on the devisee to show the fairness of the transaction by appropriate evidence," but holding that no presumption of unfairness arises merely

upon by some person or persons, for the purpose of procuring the deed, and that it was so procured"). However, there was no indication in *Gates* or *Saufley* of whether the child had also been the parent's attorney in fact. *Cf. Millican v. Millican*, 24 Tex. 426, 451 (1859) (stating that the parties' relationship, in which the defendant-son attended to the transaction of his mother's business in the probate court as administratrix of her deceased husband's estate and "had the superintendence of her out of door affairs generally" could "scarcely be thought a case of agency, of a character which awakens the jealous scrutiny of a court of equity, into the dealings of the parties").

9

from the fact that the deceased and devisee were siblings). And "a power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law." *Miller v. Lucas*, No. 02-13-00298-CV, 2015 WL 2437887, at \*4 (Tex. App.—Fort Worth 2015, pet. denied) (mem. op.) (noting that a fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability); *see Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019) ("An agreement creating a power of attorney creates a fiduciary relationship."); *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (noting that an agency relationship imposes certain fiduciary duties on the parties); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) ("Under the common law of most jurisdictions, including Texas, agency is also a special relationship that gives rise to a fiduciary duty."). Thus, an attorney in fact, as a fiduciary, carries the burden of proof to overcome the presumption of unfairness that arises in self-dealing transactions. *See Danford*, 550 S.W.3d at 285; *see also Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 509 (Tex. 1980) (stating that a fiduciary relationship puts on a profiting fiduciary "the burden of showing the fairness of the transactions"); *Healey v. Healey*, 529 S.W.3d 124, 135 (Tex. App.—Tyler 2017, pet. denied) ("A fiduciary may not use his position to self-deal.").

Michael argued to the trial court, *see infra* n.14, and argues on appeal that because *Danford*, a 2018 opinion, was decided after the effective date of the amendment to Estates Code Section 751.101, it does not apply here. However, the

law in effect at the time *Danford* was decided was the same law that was in effect in the instant case, and the facts here are quite similar to those present in *Danford*. In *Danford*, the deceased executed a will naming Robert Stawarczik[9] as the executor and sole beneficiary of her estate on the same day in 2010 that she executed a general power of attorney in his favor. 550 S.W.3d at 278. All of these documents were executed at the deceased's home in front of witnesses whom Stawarczik had brought and who had not previously met her. *Id.* Her nephews opposed the will's admission to probate, arguing that she had lacked testamentary capacity and that Stawarczik had exercised undue influence over their aunt. *Id.* at 278–79.

Stawarczik filed a traditional and no-evidence motion for summary judgment, arguing in his no-evidence motion that there was no evidence of the lack of testamentary capacity or undue influence. *Id.* The nephews responded by attaching a copy of the general power of attorney appointing Stawarczik as their aunt's agent, *id.* at 279, and argued that this evidence of a fiduciary relationship shifted the burden of proving lack of undue influence to Stawarczik. *Id.* at 285. The court agreed, holding that when the nephews presented some evidence of a fiduciary relationship—i.e., Stawarczik's appointment as attorney-in-fact on the same day as the will's execution—

---

[9]The court does not make clear in *Danford* who Stawarczik was to the deceased, other than that he was not her husband or child. 550 S.W.3d at 278 n.2.

this raised a presumption of undue influence sufficient to defeat Stawarczik's no-evidence motion.[10] *Id.* at 285–86.

Michael contends that in *Danford*, the Fourteenth Court improperly interpreted the unfairness presumption applicable to a fiduciary in self-dealing transactions and relies on the analysis of the Beaumont Court in *Fielding v. Tullos* to contend that this a rebuttable presumption. No. 09-17-00203-CV, 2018 WL 4138971, at *7 (Tex. App.—Beaumont Aug. 20, 2018, no pet.) (mem. op.). In *Fielding*, the estate's independent administrator (the deceased's niece) challenged the deceased's having changed the beneficiary designation on his accounts to his caretaker, complaining that a fiduciary relationship had existed between the deceased and the caretaker that gave rise to a presumption of undue influence. *Id.* at *1, *5. The caretaker moved for summary judgment on undue influence.[11] *Id.* at *2–3. In her response, the administrator pointed out that the caretaker had signed one of the account agreements as "agent" and that the deceased had executed a power of attorney for his accounts naming the caretaker as his agent. *Id.* at *3.

---

[10]The court also held, among other things, that the trial court had erred to the extent it had granted Stawarczik's no-evidence motion on the issue of testamentary capacity because Stawarczik had the burden on that issue. *Id.* at 282.

[11]The *Fielding* court construed the caretaker's motions as asserting only traditional grounds for summary judgment. 2018 WL 4138971, at *5. Thus, we question its applicability to the issue before us regarding burden-shifting on a no-evidence summary judgment.

12

While the Beaumont court in *Fielding* did hold that the presumption is a rebuttable presumption that is extinguished with the offering of contrary evidence, not one that shifted the ultimate burden of proof of unfairness, *id.* at *7, none of the cases cited in *Fielding* regarding this burden-shifting proposition involved undue influence in a fiduciary self-dealing situation. *See id.* (citing *Hot Head, Inc. v. Safehouse Habitats (Scot.), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (involving trademark infringement); *Long v. Long*, 234 S.W.3d 34, 37 (Tex. App.—El Paso 2003, pet. denied) (involving the characterization of marital property on divorce); *All Am. Builders, Inc. v. All Am. Siding, Inc.*, 991 S.W.2d 484, 489 (Tex. App.—Fort Worth 1999, no pet.) (involving trademark infringement and citing *Gen. Motors Co. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1983) (involving products liability)); *Tex. Nat. Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718, 724 (Tex. App.—Austin 1996, no writ) (involving an employment dispute); *Garza v. City of Mission*, 684 S.W.2d 148, 152 (Tex. App.—Corpus Christi 1984, writ dism'd w.o.j.) (involving employment termination)). Accordingly, we are unpersuaded by Michael's argument.

To the contrary, *Danford* and case law from the supreme court and other courts of appeals reflect that in situations involving self-dealing in fiduciary or confidential relationships, a presumption of unfairness arises that shifts both the burden of production and the burden of persuasion to the fiduciary seeking to uphold the transaction. *See Moore*, 595 S.W.2d at 509; *see also Stephens Cty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 260 (Tex. 1974) (observing that when a fiduciary relationship existed

between sisters and their brother, who was operating under their power of attorney and who was also a director of the museum to which the sisters had made a contribution that they later sought to set aside, "[u]nder such conditions, equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity and benefits of the transaction that it is fair and reasonable"); *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964) (noting that after respondent "established that the conveyance was executed and delivered during the existence of the attorney-client relationship, the burden was on petitioner to show that his acquisition of the interest conveyed by the deed was fair, honest[,] and equitable"); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963) ("Contracts between a corporation and its officers and directors are not void but are voidable for unfairness and fraud with the burden upon the fiduciary of proving fairness."); *McAuley v. Flentge*, No. 06-15-00051-CV, 2016 WL 3182667, at *7 (Tex. App.—Texarkana June 8, 2016, pet. denied) (mem. op.) (citing *Swenson*, 517 S.W.2d at 260; *Archer*, 390 S.W.2d at 740); *Jordan v. Lyles*, 455 S.W.3d 785, 792 (Tex. App.—Tyler 2015, no pet.) (op. on reh'g) ("Even in the case of a gift between parties with a fiduciary relationship, equity indulges the presumption of unfairness and invalidity, and requires proof at the hand of the party claiming validity of the transaction that it is fair and reasonable.").[12]  Thus, we decline Michael's invitation to follow *Fielding*.

---

[12]While Michael contends that he produced evidence of fairness that, under his *Fielding*-based rebuttable-presumption theory, would have overcome the presumption

14

It is undisputed that Michael held his mother's power of attorney when he assisted in securing the 2008 will, which enhanced his share of the estate[13] and upon which he relies in attempting to show that she revoked the 2007 will. As the holder of his mother's power of attorney, Michael was her fiduciary. *See Bombardier Aerospace Corp., LLC*, 572 S.W.3d at 231; *Lucas*, 2015 WL 2437887, at *4. Thus, Michael's fiduciary status shifted the burden to him to overcome the resulting presumption of unfairness. *See Moore*, 595 S.W.2d at 509. Because the burden of proof shifted to Michael,[14] the trial court was precluded from granting his no-evidence motion on that basis. *See* Tex. R. Civ. P. 166a(i). We sustain Jan, Donna, and Paula's first issue as to undue influence.

---

of unfairness, his evidence would have raised only a fact issue for the trier of fact, making summary judgment inappropriate. *See Ginther v. Taub*, 570 S.W.2d 516, 525–26 (Tex. App.—Waco 1978, writ ref'd n.r.e.).

[13]The 2008 will deleted Donna and Paula as beneficiaries. Michael also used Wynell's power of attorney to make arrangements for her personal care, her finances, her estate planning, and the family ranch, and after Wynell gave him signatory authority over her bank accounts, he made transfers to himself and to other accounts, including his offshore bank account.

[14]Although Michael argued in the trial court that the 2017 Durable Power of Attorney Act made "case authority cited by [his stepsisters] arising under the former statute" (former Texas Probate Code § 489B(a), now Estates Code Section 751.101) no longer applicable, he concedes on appeal that the statutory amendment "applies only to [powers of attorney] executed after the effective date" of September 1, 2017. And although Jan, Donna, and Paula contend that the 2017 Act, if applicable, would impose on Michael the duty to preserve the principal's estate plan, in light of our disposition of this issue, we need not reach this argument. *See* Tex. R. App. P. 47.1.

**B. Traditional Summary Judgment Requires Conclusive Proof**

In their third issue, Jan, Donna, and Paula argue that Michael did not conclusively prove that Wynell had testamentary capacity on the date that she executed the 2008 Will and that therefore the trial court's grant of traditional summary judgment was erroneous.

An applicant for the probate of a will must prove among other facts that the testator had testamentary capacity at the time of the will's execution and that the testator did not revoke the will. Tex. Est. Code Ann. § 256.152; *Ashley v. Usher*, 384 S.W.2d 696, 698 (Tex. 1964) (construing predecessor to Estates Code Section 256.152 and stating that "[t]he burden of establishing that a will has not been revoked is placed by this statute on the proponent of the will sought to be probated"). A written will may be revoked by "a subsequent will, codicil, or declaration in writing that is executed with like formalities." Tex. Est. Code Ann. § 253.002. A party seeking revocation by a subsequent will must prove "that the subsequent instrument was executed at a time when the [maker] was of sound mind and disposing memory." *Harkins v. Crews*, 907 S.W.2d 51, 58 (Tex. App.—San Antonio 1995, writ denied).

Michael sought traditional summary judgment asking the trial court to deny the 2007 Will's admission to probate because the 2008 Will revoked the 2007 Will. As is pertinent to this appeal, it was Michael's burden to prove as a matter of law (1) that Wynell had testamentary capacity on July 24, 2008—the date she signed the 2008 Will, (2) that the will was executed with the requisite formalities, and (3) that the will

16

revoked all prior wills. *See* Tex. Est. Code Ann. § 256.152; *Harkins*, 907 S.W.2d at 58; *see also* Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) ("To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.").

To prevail on a traditional motion for summary judgment, a movant with the burden of proof must provide *conclusive* proof as to each element on which he bears the burden. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Only when the movant produces conclusive evidence establishing the right to summary judgment does the burden shift to the nonmovant to come forward with competent controverting evidence that raises a fact issue. *Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 899–900 (Tex. 2017) (per curiam) ("At trial, a presumption operates to establish a fact until rebutted[] but not in summary judgment proceedings."). If the movant does not meet the burden of producing conclusive proof, then the burden never shifts to the nonmovant to present any evidence, or to respond, at all. *See id.* at 900–01.

As the supreme court explained in *City of Keller v. Wilson*, there are several types of conclusive evidence, which may or may not be undisputed evidence. 168 S.W.3d at 815, 816 (Tex. 2005) ("Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed."). One type of undisputed evidence that rises to the

17

level of conclusive proof is evidence that a party admits is true. *Id.* at 815. For example, "a claimant's admission that he was aware of a dangerous premises condition is conclusive evidence he needed no warning about it." *Id.* (citing *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709–10 (Tex. 2003) (per curiam)).

Another type of conclusive proof is evidence that allows only one logical inference, even if disputed. *Id.* at 814, 816 (noting, for example, that in *Murdock v. Murdock*, 811 S.W.2d 557, 560 (Tex. 1991), although a child's mother directly disputed that she had engaged in conjugal relations with anyone else during the relevant time, the blood test conclusively proved that the defendant was not the child's father). "By definition, [evidence that allows only one logical inference] can be viewed in only one light, and reasonable jurors can reach only one conclusion from it." *Id.* at 814. Thus, for this evidence to rise to the level of conclusive proof, it must be of the type that reasonable jurors could not disbelieve. *Id.* at 815. Most examples of undisputed evidence that become conclusive include "physical facts that cannot be denied." *Id.* (citing *Cty. of Bexar v. Santikos*, 144 S.W.3d 455, 460–61 (Tex. 2004) (holding that undisputed evidence that access remained along 90% of a tract's frontage conclusively disproved an impaired-access claim)). While "[i]t is impossible to define precisely when undisputed evidence becomes conclusive," the test is whether reasonable jurors are free to disbelieve the evidence. *Id.* at 815–16. Even if undisputed, evidence is not conclusive if reasonable jurors could differ in their conclusions. *Id.*

18

To discharge his summary judgment burden, Michael offered four witnesses—Donald Barley, Sandra Barley, Marti Luttrall,[15] and Linda Solomon—who each attested to Wynell's capacity at the time the 2008 Will was executed. However, because a factfinder was not bound to believe Michael's four witnesses, his proof does not fall within the category of conclusive proof that allows only one logical inference. Nor does any admission as to Wynell's testamentary capacity appear in this record. Because Michael failed to present conclusive proof of Wynell's testamentary capacity, he fell short of the legal standard that would entitle him to a traditional summary judgment, and the burden never shifted to Jan, Donna, and Paula to produce any evidence at all. Accordingly, the trial court erred when it granted Michael's motion for traditional summary judgment, and we sustain Jan, Donna, and Paula's third issue.

## IV. Conclusion

Having sustained part of Jan, Donna, and Paula's first issue and having sustained their third issue, we reverse the trial court's judgment and remand this case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: December 19, 2019

---

[15]Sandra and Marti witnessed the 2008 will.

19